WEST AMERICAN INSURANCE COMPANY, Appellee,

v.

HOLMAN, Appellant, et al.

[Cite as *W. Am. Ins. Co. v. Holman* (1998), 130 Ohio App.3d 450.]

Court of Appeals of Ohio,
Sixth District, Sandusky County.

No. S–98–016.

Decided Oct. 30, 1998.

Timothy C. James and Erin B. Parr, for appellee.

James T. Murray, for appellant.

---

HANDWORK, Presiding Judge.

This is an appeal from a judgment of the Sandusky County Court of Common Pleas that granted summary judgment to appellee, West American Insurance Company, in this declaratory judgment action concerning uninsured motorist coverage. For the reasons stated herein, this court reverses the judgment of the trial court.

Appellant, Christine Holman, administrator of the estate of her deceased husband, Michael Holman, sets forth the following four assignments of error:

"Assignment of Error No. 1

"The trial court erred by interpreting the insurance policy to deny coverage and failing to recognize the unenforceability of the purported exclusionary language.

"Assignment of Error No. 2

"The court of common pleas relied upon out-of-date case law which has effectively been overruled and out-of-state case law which is not applicable in Ohio.

"Assignment of Error No. 3

"The common pleas court mistakenly ignored the modern trend in interpreting the policy clause at issue. It is not necessary for a vehicle to be a fully-licensed production sedan to qualify as an 'uninsured motor vehicle.'

"Assignment of Error No. 4

"The trial court erred by considering the location of the accident. Uninsured motorist coverage applies whether or not the accident takes place on the highway."

The following facts are relevant to this appeal. On June 5, 1996, appellee filed a complaint seeking a declaratory judgment that no coverage existed under a policy issued by appellee to appellant or alternatively that the maximum indemnity coverage under the policy was the per-person limit of $250,000.[1] At issue was coverage for a May 3, 1995 accident in which appellant's decedent was killed when he was struck by a sprint race car while acting as a flagman at the Fremont Speedway in Sandusky County. Appellant filed an answer and counterclaim. On December 9, 1996, appellee filed a motion for summary judgment. Appellant filed a memorandum in response, and appellee filed its reply memorandum. On February 27, 1997, the trial court granted appellee's motion for summary judgment. Appellant filed a timely notice of appeal.

All of appellant's assignments of error challenge the appropriateness of the grant of summary judgment to appellee. In reviewing the grant of summary judgment, this court must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

Because all of her assignments are interrelated, this court will discuss them together. In her assignments of error, appellant argues that the trial court erred in granting summary judgment to appellee. This court finds merit in these assignments of error.

In its motion for summary judgment, appellee argued that the following provision in the policy excluded coverage:

"However, 'uninsured motor vehicle' does not include any vehicle or equipment

" * * * *

---

1. Other individuals and entities were named in the complaint but are not part of this appeal.

"5. Designed mainly for use off public roads while not on public roads." Part C–Uninsured Motorists Coverage, Paragraph C.

Appellee relied upon this provision, *Beagle v. Auto. Club Ins. Co.* (C.P.1960), 86 Ohio Law Abs. 67, 18 O.O.2d 280, 176 N.E.2d 542, and several cases from other states to support its argument that there was no coverage available to appellant because the vehicle involved in the accident was a sprint race car.

■ The major flaw in appellee's argument is appellee's assumption that the modifications to make the vehicle a sprint race car are equivalent to design. This same faulty analysis was used by the trial court in *Beagle*. In that case, although the vehicle in question was originally designed and sold for use on the highways, the court rejected the idea that "its original design is what controls." 86 Ohio Law Abs. at 69. 18 O.O.2d at 281, 176 N.E.2d at 544, This court finds this reasoning to be erroneous, as the modifications to the motor vehicle do not alter the fact that it was/is a motor vehicle. It is a vehicle powered by a motor.

The definition of "design" in Webster's Collegiate Dictionary (10 Ed.1996) 313, is "1. to create, fashion, execute, or construct according to plan * * * 2. * * * c. to devise for a specific function or end * * *." The definition of "modify" is "3 a: to make minor changes in b: to make basic or fundamental changes in often to give a new orientation to or to serve a new end." *Id.* at 867. The record below included a photograph of a typical sprint race car.[2] Even though modifications had been made to the motor vehicle, this court agrees with the court in *Putka v. Parma* (1993), 90 Ohio App.3d 647, 651, 630 N.E.2d 380, 383, when it noted: "As a common adage goes, 'if it swims like a duck and quacks like a duck, it is a duck.' "

Furthermore, although appellee focuses upon the modifications made to. the motor vehicle, the motor vehicle was still "propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires" and, thus, falls within the definition of "motor vehicle" provided in R.C. 4501.01(B).[3] In *Metro. Property & Liability Ins. Co. v. Kott* (1980), 62 Ohio St.2d

---

**2.** Also included in the record is appellant's affidavit, in which she states:

"I am aware that people or property may be transported or drawn on a highway by means of sprint cars. I've seen sprint cars similar to the one involved in the accident in which my husband was killed, running in public streets in Knoxville, Iowa at the Knoxville National Show and I am aware that sprint cars run in public streets in other places."

**3.** The complete definition of "motor vehicle" provided in R.C. 4501.01(B) is the following:

" 'Motor vehicle' means any vehicle, including manufactured homes and recreational vehicles, that is propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires, except motorized bicycles, road rollers, traction engines, power shovels, power cranes, and other equipment used in construction work and not designed for or employed in general highway transportation, well-drilling machinery, ditch-

114, 115–116, 16 O.O.3d 139, 139–140, 403 N.E.2d 985, 985–986, the Supreme Court of Ohio ruled that the meaning of "motor vehicle" as used in R.C. 3937.18 is defined in R.C. 4501.01(B). Pursuant to R.C. 3937.18(A)(1), uninsured motorist coverage is mandated for the protection of insureds "who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." This statute expressly states that it is applicable to motor vehicles, *Horsely v. United Ohio Ins. Co.* (1991), 58 Ohio St.3d 44, 45, 567 N.E.2d 1004, 1005, and it is well settled that the purpose of the statute is to protect an insured motorist, under his own policy, from the effects of personal injury resulting from another motorist who carries no insurance. *Globe Am. Cas. Co. v. Goodman* (1974), 41 Ohio App.2d 231, 236, 70 O.O.2d 447, 449–450, 325 N.E.2d 257, 261. See, also, *Rowe v. State Farm Mut. Auto. Ins. Co.* (1990), 66 Ohio App.3d 1, 4, 583 N.E.2d 381, 383–384.

In *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309, syllabus, the Ohio Supreme Court held:

"An automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law."

At issue in *Alexander* was State Farm's household exclusion under which an insured's own automobile could not be an uninsured or underinsured vehicle in a one-car accident. The Ohio Supreme Court stated:

"R.C. 3937.18(A)(1) and (2) are premised on the tortfeasor's legal liability to the injured insured. See *Kurent v. Farmers Ins. of Columbus* (1991), 62 Ohio St.3d 242, 581 N.E.2d 533. Thus, the intent of the statute is to provide uninsured and underinsured motorist coverage for injured persons who have a legal cause of action against a tortfeasor but who are uncompensated because the tortfeasor is either (1) not covered by liability insurance or (2) covered in an amount that is less than the insured's uninsured motorist coverage.

---

digging machinery, farm machinery, trailers that are used to transport agricultural produce or agricultural production materials between a local place of storage or supply and the farm when drawn or towed on a public road or highway at a speed of twenty-five miles per hour or less, threshing machinery, hay-baling machinery, corn sheller, hammermill and agricultural tractors, machinery used in the production of horticultural, agricultural, and vegetable products, and trailers that are designed and used exclusively to transport a boat between a place of storage and a marina, or in and around a marina, when drawn or towed on a public road or highway for a distance of no more than ten miles and at a speed of twenty-five miles per hour or less."

"State Farm's household exclusion ignores the statute's basic premise, to wit: the tortfeasor's legal liability to the insured. The State Farm policy eliminates uninsured and underinsured motorist coverage based solely on the fact that the tortfeasor is driving the insured's automobile. By excluding coverage for torts that occur in the insured's vehicle, State Farm seeks to escape from part of the uninsured motorist coverage that R.C. 3937.18 requires it to provide.

"In essence State Farm's exclusion is an attempt to change Ohio's tort law, by contractual definition, in order to circumvent its duty to provide uninsured and underinsured motorist coverage pursuant to R.C. 3937.18. This it cannot do. Accordingly, State Farm's exclusion is unenforceable because it conflicts with R.C. 3937.18." *Id.* at 400, 583 N.E.2d at 312.

In *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 23 O.O.3d 495, 433 N.E.2d 547, syllabus, the Supreme Court of Ohio held that pursuant to the mandate of R.C. 3937.18, any contractual restrictions on uninsured motorist coverage must comply with the purpose of the statute. Policy restrictions that vary from the statute's requirements are unenforceable. *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 433, 23 O.O.3d 385, 386, 433 N.E.2d 555, 557–558. Thus, contracts may not exclude "motor vehicles" from the policy definition of "uninsured motor vehicles." *Horsely v. United Ohio Ins. Co.*, 58 Ohio St.3d at 45, 567 N.E.2d at 1005. Following the analysis of the courts in above-cited cases, it is clear that in defining the proper scope of uninsured motorists coverage in any particular instance, a court must evaluate the contract language and facts presented in light of the statutory mandate that coverage be provided to protect the insured from injury caused by an uninsured motorist, and in light of the statutory definition of a "motor vehicle."

In this case, appellant has a legal cause of action against the tortfeasor for her decedent's death but will go uncompensated by the tortfeasor, who is uninsured. The exclusion in the policy issued by appellee, if given effect, will eliminate uninsured motorist coverage to appellant even though her claim arises from a cause of action recognized by Ohio tort law, a result that would clearly be contrary to the legislature's intent in enacting R.C. 3937.18. Upon consideration of the foregoing, and particularly the law as set forth in *Alexander, supra,* this court finds that the trial court erred in granting summary judgment to appellee.

Accordingly, appellant's first, second, third, and fourth assignments of error are found well taken.

On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the judgment of the Sandusky County Court of Common Pleas is reversed. This cause is remanded to that court for further

proceedings not inconsistent with this decision. Appellee is ordered to pay the court costs of this appeal.

*Judgment reversed.*

SHERCK and KNEPPER, JJ., concur.