HOLMAN, Admr., Appellee,

v.

KEEGAN et al., Appellants.

[Cite as *Holman v. Keegan* (2000), 139 Ohio App.3d 911.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–99–070.

Decided Sept. 22, 2000.

See, also, *W. Am. Ins. Co. v. Holman,* 130 Ohio App.3d 450, 720 N.E.2d 212.

912

*James T. Murray,* for appellee.

*John A. Coppeler* and *James C. Barney,* for appellant Willie Keegan.

*Timothy C. James* and *Raymond H. Pittman III,* for appellant West American Insurance Co.

SHERCK, Judge.

This is an appeal from a judgment issued by the Erie County Court of Common Pleas in a wrongful death/survivorship action. Following a bench trial on damages only, the court awarded more than $2 million to decedent's heirs. Because we conclude that the trial court erred in denying appellants' request for a jury trial on the damages issue, we reverse.

Appellee, Christine Holman, is the widow of Michael Holman and the administrator of his estate. Michael Holman was killed while acting as a flagman during a 1995 sprint car race at a Fremont, Ohio motor race track. Appellant, Willie Keegan, was a participating race car driver who lost control of his car and struck Michael Holman, causing Holman's death. Christine Holman was present and witnessed the event.

Appellee originally instituted a wrongful death and survivorship action against the owner of the speedway and several others, including appellant Keegan, in Erie County. While this lawsuit was proceeding, Michael Holman's automobile insurer, appellant West American Insurance Company ("West American"), filed a declaratory judgment action in the Sandusky County Court of Common Pleas. West American sought a determination that it was not liable to provide uninsured/underinsured motorist coverage for this accident. The Sandusky County court ruled in favor of West American, but we reversed that judgment on appeal, concluding that coverage had to be provided. *W. Am. Ins. Co. v. Holman* (1998), 130 Ohio App.3d 450, 720 N.E.2d 212. Meanwhile, in Erie County, appellee settled with all the defendants in that suit, except Keegan.[1]

On November 21, 1997, appellee refiled her suit against appellant Keegan, alleging claims of wrongful death and survivorship and negligent infliction of

---

1. A settlement document included appellant Keegan, but when the original Erie County suit was dismissed, all except him were dismissed with prejudice.

severe emotional distress. Accompanying the complaint was a request for admissions. The request contained six statements, which taken together, amounted to an admission of liability, if true.

On December 26, 1997, appellant Keegan, *pro se*, answered the complaint by generally denying the allegations it contained. Appellant Keegan did not, however, respond to the request for admissions until June 2, 1999, coincident with a first appearance by counsel for him.

Shortly after appellee's filing of the initial complaint, on December 15, 1997, appellant West American moved to intervene, " * * * to protect its interest with regard to potential uninsured or underinsured motorist coverage." On April 9, 1998, the trial court granted appellant West American's motion. On April 26, 1999, three months prior to the scheduled trial date, appellant West American sought leave to file an answer *instanter* to appellee's complaint. The accompanying answer set forth several affirmative defenses for appellant Keegan.

On June 9, 1999, in response to appellant Keegan's late reply to appellee's request for admissions, appellee moved, pursuant to Civ.R. 36, that the court deem the items in the 1997 requests admitted. Additionally, appellee challenged the standing of appellant West American to act as Keegan's "*de facto*" attorney.

Appellee prevailed on both these issues. Since the admissions established appellant Keegan's liability, the court ordered the matter to proceed to a trial solely to determine damages. The court also ruled, over objection, that since appellee was the only party to demand a jury trial and had subsequently waived the jury, that the damages trial would be to the bench.

Prior to trial, appellant West American attempted an interlocutory appeal of the court's ruling. We found, however, that the judgments at issue were not final and appealable and dismissed the appeal. *Holman v. Keegan* (July 30, 1999), Erie App. No. E–99–055, unreported. On August 10, 1999, the matter proceeded to trial. The trial court awarded appellee $1,825,000 for the wrongful death and survivorship claims and a separate $250,000 to Christine Holman, individually, for her emotional distress claim.

From this judgment, appellants now bring this appeal. Appellant Keegan sets forth the following three assignments of error:

"1. The trial court erred in ruling that defendant, Willie Keegan, had admitted requests for admissions served upon him with the complaint by not filing timely answers to the requests, and thereby admitted his negligence in this wrongful death case arising out of a sprint car auto race, even though defendant, acting *pro se*, had timely filed an answer to the complaint in which he categorically denied all allegations of negligence asserted against him.

"2.   The trial court erred in ruling that defendant, Willie Keegan, was precluded from filing answers to the requests for admissions out of rule where (a) defendant had, *pro se,* timely denied all allegations of negligence against him in answering the complaint, (b) there was no warning to a *pro se* defendant, such as is found in a summons accompanying the service of a complaint, of the consequences of failing to serve timely responses to requests for admissions, and (c) there had been no motion filed by plaintiff during the pendency of the case that the Court treat the requests as being deemed admitted prior to defendant's attempt to submit answers or 'amended answers' out of rule.

"3.   The trial court erred in denying defendant a jury trial on the issue of damages where defendant did not consent to the withdrawal of the jury demand made by plaintiff at the time of the filing of the complaint."

Appellant West American Insurance Company raises the following additional five assignments of error:

*"Assignment of Error No. 1*

"The trial court erred in denying appellant/intervenor, West American Insurance Company, the right to a jury trial and by allowing appellee to unilaterally withdraw her jury demand without the consent of the other parties.

*"Assignment of Error No. 2*

"The trial court erred when it prohibited appellant/intervenor, West American Insurance Company from introducing evidence at trial which disputed the liability of the uninsured motorist.

*"Assignment of Error No. 3*

"The trial court erred when it bound appellant/intervenor West American Insurance Company, for purposes of the determination of liability, by the failure of appellant Keegan to timely respond to requests for admissions.

*"Assignment of Error No. 4*

"The trial court erred when it determined in its opinion and judgment entry that the affirmative defense of accord and satisfaction lacked merit since the trial court prevented appellants, West American and Willie Keegan, from offering evidence on that defense.

*"Assignment of Error No. 5*

"The trial court's determination that plaintiff/appellee, Christine Holman, was entitled to $250,000 in damages on her separate negligent infliction of emotional distress claim [is] against the manifest weight of the evidence."

■

## I

■ Appellant West American, in its first assignment of error, and appellant Keegan, in his third assignment of error, both complain that the trial court erred when it allowed appellee to unilaterally withdraw her jury demand. The trial court ruled that by failing to demand a jury in his answer, appellant Keegan waived his right to a jury. With respect to appellant West American as an intervenor, the court held it lacked standing to demand a jury trial.

Once a demand for a jury trial has been made, the Civil Rules provide only three ways in which the jury trial can be circumvented: (1) the parties may, on the record, stipulate to a bench trial, Civ.R. 39(A)(1); (2) the trial court may find that the right to a jury trial does not exist (this includes making a finding that the jury was waived by a party who fails to answer or appear for trial, Civ.R. 39[A][2]); and (3) the party who demanded the jury may withdraw the demand, however, the demand, "may not be withdrawn without the consent of the parties." Civ.R. 38(D); *Cincinnati Ins. Co. v. Gray* (1982), 7 Ohio App.3d 374, 377, 7 OBR 474, 478, 455 N.E.2d 1080, 1084; *Bishop v. Hybud Equip. Corp.* (1988), 42 Ohio App.3d 55, 57, 536 N.E.2d 694, 696–697; *Haddix v. Mercury Marine* (July 10, 1992), Lucas App. No. L–91–270, unreported, 1992 WL 158942.

Irrespective of the merits of appellant West American's arguments concerning the demand attached to its untimely filed answer, it is clear that appellee demanded a jury trial in her original complaint and that there was no stipulation among the parties to waive the demand, no determination of an involuntary waiver, nor was there any consent by these parties to appellee's withdrawal of the demand. Consequently, the trial court erred when it refused to impanel a jury in this case.

Accordingly, appellant West American's first assignment of error and appellant Keegan's third assignment of error are well taken. Since a reversal on this point requires a new trial, appellant West American's fifth assignment of error is, therefore, moot.

## II

Appellant Keegan's remaining assignments of error concern the propriety of the trial court's decision to deem his failure to timely respond to appellee's requests for admissions as an admission of liability. Appellant West American, in its second, third, and fourth assignments of error complains that it should not have been bound by appellant Keegan's admissions and should have been permitted to submit independent evidence negating his liability.

Civ.R. 36 provides:

"(A) Request for admission. A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(B) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. * * *

" * * * The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney.* * *

" * * *

"(B) Effect of admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. * * * "

The rule is adapted from Fed.R.Civ.P. 36, Baldwin's Ohio Revised Code, Annotated, Rules of Court, Civil (1994) 429, Commentary, and is intended to give an admission a conclusory binding effect unless it is withdrawn or amended. The rule's purpose is to narrow the issues for trial and to facilitate proof for those issues that remain. It is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial. Federal Rules Advisory Committee's Note, Rule 36, 1967 Preliminary Draft, quoted in Page's Ohio Revised Code, Annotated, Civil Rules (1994) 215. "Unless a party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." *Id.*, citing, *inter alia*, Finman, The Request for Admissions in Federal Civil Procedure (1962), 71 Yale L.J. 371, 418–426.

Appellant Keegan advances two reasons why the effects of the rule should be mitigated with respect to him. First, he suggests that because he was *pro se* when initially served with the request for admissions, and because there is no provision in the rule that provides notice to the effect of the failure to respond, it is simply unfair to apply the rule to him. Second, citing *Balson v. Dodds* (1980), 62 Ohio St.2d 287, 16 O.O.3d 329, 405 N.E.2d 293, and *Aetna Cas. & Sur. Co. v. Roland* (1988), 47 Ohio App.3d 93, 547 N.E.2d 379, appellant Keegan argues that he should have been allowed to withdraw his admissions pursuant to part (B) of Civ.R. 36 because his answer to the complaint provided sufficient notice that he

denied the elements of liability and, in any event, appellee would not have been prejudiced by permitting such a withdrawal.

With respect to appellant Keegan's first argument, it is well settled in this state that a *pro se* civil litigant is bound by the same rules and procedures as those who retain counsel. A *pro se* civil litigant, therefore, is held to the same standard as any other litigating party and must accept the results of his or her own errors or mistakes. *Dawson v. Pauline Homes, Inc.* (1958), 107 Ohio App. 90, 92, 7 O.O.2d 413, 413–414, 154 N.E.2d 164, 165; *Meyers v. First Natl. Bank of Cincinnati* (1981), 3 Ohio App.3d 209, 210, 3 OBR 238, 239, 444 N.E.2d 412, 413–414; *Kilroy v. B.H. Lakeshore, Co.* (1996), 111 Ohio App.3d 357, 363, 676 N.E.2d 171, 174–175. Beyond this, the record supports appellee's assertion that appellant Keegan not only failed to respond to the request for admissions for nearly eighteen months, but that he also ignored several notices of depositions during this time and generally refused to participate in the discovery process. Appellant is entitled to no special consideration as a *pro se* litigant.

With respect to appellant's second argument, the Supreme Court of Ohio tempered the effect of Civ.R. 36 when it held in *Balson, supra,* that:

" * * * a trial court, upon motion, may permit the withdrawal or amendment of a Civ.R. 36(A) admission when presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." *Balson,* at paragraph two of the syllabus.

When Mary Balson sued Linda Dodds for alienation of affection of Balson's husband, Dodds was fourteen days late in responding to Balson's request for admissions. When Balson moved for summary judgment, basing her motion on the admissions, the trial court denied the motion, permitting Dodds to withdraw the admission pursuant to Civ.R. 36(B). The trial court's decision was affirmed by both the court of appeals and the Ohio Supreme Court.

*Roland* followed *Balson,* adding that when a defendant in his or her answer denied the substance of an untimely request for admissions responses, it was an abuse of discretion to fail to rule on a motion to withdraw or amend the admission pursuant to Civ.R. 36(B).

We need not distinguish *Balson* and *Roland.* In each of those cases, the trial court, in its discretion, ruled that to allow a defendant to withdraw or amend a late submitted admission request would not prejudice the plaintiff. Here, the trial court found that to permit appellant Keegan to withdraw his prior admissions within three weeks of the trial date would operate to the prejudice of the plaintiff. As a result, the court concluded that, pursuant to the rule, liability was deemed admitted and the case should go forward on the issue of damages alone.

In light of the purposes of the rule, we cannot say that the trial court abused its discretion in reaching this conclusion.

Accordingly, appellant Keegan's first and second assignments of error are not well taken.

## III

Appellant West American's Assignments of Error Nos. 2, 3, and 4 concern the trial court's rulings that essentially limited West American's participation in the case to the question of damages. According to the trial court, appellant West American's interest in this case was solely contractual. The trial court focused on a clause in the uninsured motorist coverage portion of appellee's policy which warns that:

"Any judgment for damages arising out of a suit brought without [West American's] written consent is not binding on [West American]."

The trial court reasoned that since this provision applies only to judgments "for damages," West American reserved in its contract no right to enter a suit against its own insured to contest liability. From this ruling, the court concluded that West American lacked standing to enter evidence negating liability or present legal defenses that might negate liability. Appellant West American insists that this ruling was erroneous.

In this matter, appellant West American applied to the trial court to intervene as a matter of right pursuant to Civ.R. 24(A)(2), which, in material part, provides:

"(A) Upon timely application anyone shall be permitted to intervene in an action * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Although there has been some dispute as to whether an insurer may intervene of right to protect itself from an uninsured/underinsured motorist claim, see, e.g., *Bennett v. Harrison* (Nov. 12, 1999), Wood App. No. WD–99–010, unreported, 1999 WL 1022859, here the trial court permitted intervention. The propriety of that ruling is not at issue.

What is at issue is the extent of the intervention. Appellee argues that the only interest appellant West American asked to protect was its right of subrogation. Given this, according to appellee, appellant West American was aligned with appellee and could not do anything detrimental to appellee's interest. Consequently, the trial court acted correctly when it denied appellant West

American the opportunity to assert defenses to appellant Keegan's liability. Moreover, appellee contends that even if appellant West American's scope of interest was greater than just subrogation, the legal and ethical challenges set up when an insurer enters litigation with a position in opposition to its insured dictate that a court that permits such intervention carefully limit the role such a party may play. Finally, appellee argues that, in any event, the scope of an insurer's intervention is limited by its interest in the case that is solely contractual. In this matter, appellee maintains, appellant West American's interest was contractually limited to a determination of damages only and the trial court properly ruled it lacked standing to contest liability.

Appellant West American clearly has a greater interest in this litigation than subrogation alone. As an uninsured/underinsured motorist insurer, the company has a pecuniary interest whenever it appears that a tortfeasor has insufficient resources to satisfy a potential judgment. Therefore, it would appear that when the other requirements of Civ.R. 24(A) are satisfied, a court does not err in permitting the insurer to intervene as a defendant. See *Bennett v. Harrison*, *supra*. Here, although the trial court's entry permitting intervention is somewhat spartan, appellant West American's memorandum in support of intervention unequivocally expressed its interest in protecting itself from a potential uninsured coverage loss and requested to intervene as a defendant. Consequently, we conclude that the intervention order was consistent with appellant West American's request.

We must also note that in states which permit such intervention, the conflict inherent when an insurer inserts itself in opposition to its insured frequently gives rise to conditions being placed on such insurers. Annotation, Right of Insurer Issuing "Uninsured Motorist" Coverage to Intervene in Action by Insured Against Uninsured Motorist (1985), 35 A.L.R.4th 757.[2] Here, the trial court set no specific condition for appellant West American's intervention; nevertheless, its rulings restricting the insurer's role in the case indicate a sense by the court that some restraint on the insurer's conduct was necessary.

---

2. Typical of these are the conditions set forth by the Utah Supreme court that (1) the intervenor must accept the pending action as it finds it; (2) must identify the intervening insurer to the jury; (3) the intervening insurer must disclose to its insured that their interests may be in conflict; (4) the insurer must not be allowed to use against its insured any information whatsoever gained by reason of the insurer-insured relationship; and (5) if the insurer has a duty to defend the insured, for example in a counterclaim by the uninsured motorist, the insured should be allowed to choose his or her own independent counsel who must then be compensated by the insurer. *Lima v. Chambers* (Utah 1982), 657 P.2d 279, 284–285; accord *Barry v. Keith* (Ky.1971), 474 S.W.2d 876, 878; *Wert v. Burke* (1964), 47 Ill.App.2d 453, 459, 197 N.E.2d 717, 720–721.

■■ As to the trial court's ruling concerning appellant West American's standing to insert defenses on behalf of the tortfeasor, we emphasize that an insurance company is not a tortfeasor. *Westfield Ins. Co. v. Jeep Corp.* (1988), 55 Ohio App.3d 109, 111, 562 N.E.2d 912, 913–914. The only reasons an insurer has any interest sufficient to become a party in a suit between one of its insureds and a tortfeasor are (1) in alliance with its insured to protect its subrogation rights, or (2) in opposition to its insured in an effort to minimize its exposure as an uninsured/underinsured motorist insurer. Both of these situations arise from the insurance contract. Therefore, in either event, the insurer's interest in the case is dependent on the contract of insurance between the insurer and the insured. *Id.* The contract, therefore, governs the scope of the insurer's intervention.

■ If the language of an insurance contract is doubtful, uncertain or, ambiguous, it is a fundamental rule of law that its language, which is selected by the insurer, must be liberally construed in favor of the insured and strictly against the insurer. *Am. Fin. Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 173, 44 O.O.2d 147, 148, 239 N.E.2d 33, 35. A maxim of construction relevant here is the Latin *expressio unius est exclusio alterius*, the inclusion of a specific thing implies the exclusion of those not mentioned. *Helberg v. Natl. Union Fire Ins. Co.* (1995), 102 Ohio App.3d 679, 683, 657 N.E.2d 832, 834–835; Black's Law Dictionary (5 Ed.1979) 521.

In this matter, the insurance policy issued by appellant West American does not deal with the right of the insurer to intervene against its insured. The only clause in the policy that relates to the insurer's right with respect to the uninsured tortfeasor is the earlier–quoted phrase disclaiming the insurer's responsibility to pay "damages" that arise out of a suit brought without its consent. The policy is silent concerning any reservation of rights relating to liability. In our view, had the insurer intended to reserve the right to reject a judgment of liability, it could have fashioned language delimiting such a judgment, just as it had with respect to damages, but it did not. The fact that the policy specifically includes a "damages" reservation and not a "liability" reservation suggests that the insurer waived any objection on the liability issue. Absent a contractual reservation to contest liability, we must concur with the trial court that appellant West American has standing only to contest damages. The rulings of which appellant West American complains are in conformity with this interpretation.[3] Accordingly, appellant's remaining assignments of error are not well taken.

---

3. Appellant West American, citing *Bennett v. Harrison, supra,* argues that the trial court was without authority to interpret the insurance policy because the proper forum for that is a declaratory judgment action. In *Bennett* an insurer argued that it should be permitted to intervene to enforce the terms of its policy. We held that the appropriate remedy for that was

On consideration whereof, the judgment of the Erie County Court of Common Pleas is reversed with respect to the jury trial issue and the case is remanded for further proceedings consistent with this decision. In all other respects the judgment is affirmed.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

RICHARD W. KNEPPER, P.J., and MELVIN L. RESNICK, J., concur.

---

a declaratory judgment action. Our language should not, however, be interpreted to hold that a court may never interpret a contract without a declaratory judgment action.