[Cite as *T.S. v. A.T.*, 2020-Ohio-6871.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


T.S.                                              Court of Appeals No. L-19-1296

     Appellant                         Trial Court No. JC14242256

v.

A.T.                                              **DECISION AND JUDGMENT**

     Appellee                          Decided:  December 23, 2020

* * * * *

Karin L. Coble, for appellant.

Amy E. Stoner, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This case is before the court on appeal from the November 15, 2019

judgment of the Lucas County Court of Common Pleas, Juvenile Division, overruling

appellant's objections to the magistrate's decision, denying her motion for a new hearing,

and awarding legal custody to appellee.  For the reasons that follow, we affirm the trial

court's judgment.

## I. Background and Procedural History

{¶ 2} Appellant, T.S., and appellee, A.T, are parents to Ar.T., born September 1, 2013. Appellant and appellee entered into a shared parenting plan by a consent judgment entry on May 1, 2017. In the summer of 2018, the parties requested mediation pursuant to the shared parenting plan. Appellant filed a motion to modify the allocation of parental rights on June 13, 2018. Appellee also filed a motion to modify the allocation of parental rights on July 16, 2018.

{¶ 3} During the pendency of the proceedings, appellant reported appellee to Lucas County Children Services (LCCS) four times, filed two petitions for a civil protection order against him in the domestic relations division of common pleas court,[1] and filed domestic violence and violation of a temporary protective order charges against him in Toledo Municipal Court. LCCS determined the claims as unsubstantiated, the court dismissed the petitions for a protection order, and the municipal court dismissed the domestic violence case after appellant failed to appear.[2]

---

[1] Appellant also filed petitions for a civil protection order against appellee's then-girlfriend in the general trial division of common pleas court. At trial, the GAL addressed the claims against the girlfriend, and indicated the court dismissed the petitions, and determined through her own investigation that appellant's allegations were unfounded, noting the efforts of appellant in attempting to create evidence to use against the girlfriend. These efforts included pressuring medical providers to attribute facial swelling, caused by allergies, to physical abuse—a punch—by the appellee's girlfriend.

[2] Appellee testified that he admitted to the violation of the temporary protection order in municipal court, indicating he spoke with appellant by phone during the time he was barred from having any contact. Appellee had called appellant's mother to convey

2.

{¶ 4} Appellant's family also attacked appellee, twice, at the barbershop where he worked. On one occasion, appellant's uncle pointed a gun at appellee's head while Ar.T. watched, accusing appellee of hurting Ar.T. On another occasion, appellant's uncle beat him up, accusing appellee of locking Ar.T. in his basement and letting his girlfriend hurt Ar.T. Appellant also went to appellee's workplace while he was not there, and damaged his barber equipment in a fit of rage. These incidents were recorded on the barbershop's surveillance video.

{¶ 5} The matter was eventually scheduled for a July 9, 2019 trial on the competing motions seeking modification of parental rights. On July 5, appellant filed a pro se motion to remove the guardian ad litem (GAL), based on her belief that the GAL's recommendation favored appellee with no meaningful consideration of appellant's evidence. That same date, appellant filed a pro se motion for continuance, indicating she needed 30 days to "gather monies" to retain a new attorney. On July 8, the magistrate denied the motion for continuance, finding appellant failed to demonstrate good cause and noting the matter was "pending over one year" and appellant had counsel "at the last hearing."

{¶ 6} On the day of trial, appellant asked her current attorney to withdraw as counsel of record, and the trial court granted counsel leave to withdraw. Appellant then proceeded pro se, without objection and without any renewed request for a continuance.

---

information about Ar.T., and did not end the call once appellant took the phone to speak directly with him.

3.

**{¶ 7}** After a brief hearing, the trial court denied the motion to remove the GAL. Appellant then proceeded on her motion for a change in custody. Appellant presented testimony of Anisha S.,[3] who testified that appellee failed to pick up Ar.T. on his Wednesday the previous week. Anisha also testified that she had witnessed appellee "be abusive" towards appellant in May 2018, and the incident caused Ar.T. to cry. Anisha otherwise admitted that appellee is a good dad to Ar.T.

**{¶ 8}** In the midst of this testimony, appellant inquired about reviewing the GAL's written report and recommendation. The court recessed after Anisha's testimony, provided appellant with her own copy of the recommendation, and gave appellant time to read the written report at her seat in the courtroom. When the trial resumed, appellant indicated she had an opportunity to review the report and recommendation.

**{¶ 9}** Appellant proceeded with her own testimony, provided in narrative form. Appellant first asked to withdraw her motion for a change in custody, and orally moved to retain the shared parenting plan instead, demonstrating a change of heart. She stated that she filed her motion based on concerns with appellee's visitation, but no longer had those concerns. She also tried to explain the numerous unsubstantiated complaints and dismissed charges against appellee as attempts to keep Ar.T. safe. She implored the court not to take Ar.T. away, and indicated appellee agreed to withdraw his motion if she reimbursed him for his attorneys fees to date. Cross-examination of appellant explored

---

[3] Anisha and appellant have the same surname, but no relationship was identified for the record.

4.

her history of filings against appellee, her work history, the dispute regarding school tuition, her role in the attacks on appellee, and her own destruction of appellee's property. Appellant offered an additional statement after her cross-examination, as rebuttal.

{¶ 10} Appellee testified next, mainly about the conflict caused by appellant in sharing parenting time, despite the shared parenting plan. Appellee testified regarding appellant's unilateral decisions, such as enrolling Ar.T. in school before reaching agreement regarding payment of tuition or spending $1,400 on a birthday party and expecting appellee to pay half. Appellee also testified regarding appellant's history of filing unsubstantiated reports to LCCS or filing baseless criminal complaints and petitions for protective orders, resulting in nights in jail, attorney fees, and more difficulty in exercising his parenting time with Ar.T. He also testified that appellant did not appear to place much importance on Ar.T.'s education, noting Ar.T. came to him on his week with unfinished work from appellant's week, and appellant either took Ar.T. to school late, or not at all, on numerous occasions.

{¶ 11} Appellee also countered appellant's claims of domestic violence, noting he recorded his conversation with appellant during one claimed incident, and produced the recording for the prosecutor's office to dispute her claims. He testified regarding appellant's treatment of Ar.T., manipulating her to cry just before he picked her up for his week, and causing her to cry during her school graduation ceremony by forcing her to change her outfit in the school restroom, discarding the clothing and shoes that Ar.T. had selected while shopping with appellee. He also described instances in which appellant

5.

placed herself in his path during periods she had a restraining order against him, with one incident resulting in appellee admitting to a protection order violation in court. Eventually, appellee stated, he took a few weeks off from his visitation time, because, "Every time that I would see [Ar.T], a new case would come about when she leaves from being with me, mainly because of the girlfriend that I had. Also it would just be a lot of different little cases coming on."

{¶ 12} Appellee described the incidents in the barbershop. He testified regarding appellant's uncle holding a gun to his head while Ar.T. watched. He also testified regarding appellant's father and other uncle beating him, while accusing him of hurting Ar.T. Appellee indicated he did not wish to file charges against appellant's family, believing appellant was manipulating them to attack him. Appellee also testified regarding appellant's destruction of his barber tools, captured on surveillance video. He indicated "she came in one day and threw my clippers on the ground * * * and broke all my clippers or quite a bit of them." This occurred the day after he sent his sister to pick up Ar.T. for his week, and appellant's grandmother refused to release the child.

{¶ 13} Finally, appellee testified on money matters. He testified regarding appellant's insistence he split the cost of Ar.T.'s birthday when she was 3 years old, indicating he offered her less money, believing a more modest party was appropriate. As to the tuition dispute, appellee testified that his obligation was to pay for childcare, and although appellant enrolled Ar.T. in a private school without consulting him, he agreed to pay the tuition as he liked the school and Ar.T. was doing well there. He also testified

6.

regarding his employment and earnings, and indicated he owned his own home, purchased in 2016. Appellee next described appellant's attempts to persuade him to dismiss his motion for custody, for a price. Appellee testified that appellant offered to reimburse him for the legal fees he had spent in the case if he would go back to the shared parenting plan. Appellee did not agree to a dismissal.

{¶ 14} Appellant cross-examined appellee, in part, by offering statements. She disputed that Ar.T. often came to him with incomplete homework from her week, and disputed his claim she attempted to pay him to dismiss the custody case. Appellant questioned appellee regarding anger issues, with appellee indicating only appellant had anger issues. He also denied ever assaulting appellant, and denied letting anyone hurt Ar.T.

{¶ 15} Much of appellant's cross-examination of appellee revisited his prior testimony, interspersed with her accusations against appellee. Appellee denied her accusations, but also admitted that appellant paid Ar.T.'s school enrollment fee, and acknowledged that appellant loves Ar.T. However, when asked whether appellant was unfit in "any way," appellee offered specific instances in which appellant upset Ar.T. to get to him. As to appellant's parenting style, appellee testified that he felt appellant was not "attending to Ar.T. as [she] should be." Appellee summed up appellant's attitude as a parent as, "you hate me more than you love her, bottom line."

{¶ 16} The GAL testified last. She indicated both appellant and appellee were loving parents to Ar.T., and each provided an appropriate home. However, the GAL also

7.

noted appellant had considerable anger issues, and recommended appellant receive psychiatric care and ongoing anger management counseling. The GAL noted several incidents involving appellant's anger, including incidents recorded by the barbershop's surveillance video and incidents related to the GAL by Ar.T.'s teachers. The GAL also noted that appellant used the courts and LCCS to prevent appellee from seeing Ar.T., wielding the system as a weapon against appellee. The GAL found that appellant generally created drama in Ar.T.'s life, and modeled poor behavior choices for the child. After completing her investigation, which included interviews and a review of records, court cases, and surveillance video, the GAL recommended terminating the shared parenting plan and granting custody of Ar.T. to appellee as in the best interest of Ar.T., with appellant to receive visitation according to the court's standard schedule. The court admitted the GAL's report and recommendation as an exhibit.

{¶ 17} After the close of appellee's case, the court gave appellant the opportunity to make a final statement as her closing argument, to address and rebut the testimony of the GAL. In her statement, appellant argued in favor of keeping the shared parenting plan in place, and attempted to justify her conduct in filing multiple reports and complaints against appellee. She also argued that appellee was using Ar.T. against her to receive money, and that she would never try to prevent appellee from being in Ar.T.'s life.

{¶ 18} On July 10, 2019, the magistrate issued a decision, terminating the shared parenting plan and designating appellee the custodial and residential parent, with

8.

appellant granted visitation according to the court's standard schedule. The magistrate found, in part, that appellant has "significant anger issues" and "has engaged in a concerning pattern of behavior in attempts to eliminate [appellee] from the decision making process involving the child." The magistrate also noted that appellant "is not satisfied with [appellee's] actions, involvement, and or input, [appellant] has repeatedly made false reports against [appellee] to LCCS, the police and/or the judicial system, and has engaged in or caused direct violence against father, even in the presence of the child."[4]

{¶ 19} Appellant filed an objection the magistrate's decision, through counsel.[5] She challenged the magistrate's failure to grant a continuance and requested a new hearing. She also challenged the magistrate's factual findings and evidentiary rulings, and challenged the finding of change of circumstances, justifying a modification of custody.[6] In support, appellant attached exhibits that included appellant's affidavit, attesting to an off-the-record, oral request for continuance on the date of trial, and an

---

[4] The magistrate also issued a supplemental support order, requiring appellant to pay child support in the amount of $502.41 each month. Appellant does not challenge this order on appeal.

[5] Appellant's initial objection was denied for failure to provide a transcript. Appellant filed a motion to reconsider and vacate the denial, through counsel, which the court granted.

[6] The issues raised in the written objections, filed with the trial court, are nearly identical to the assignments of error raised on appeal.

9.

unauthenticated document, purportedly from a 2014 criminal proceeding in which appellee entered an *Alford* plea, with no admission of guilt, to a drug trafficking offense.

{¶ 20} The trial court overruled the objections after an independent review. The trial court found no basis for continuance, considering appellant had prepared for trial with counsel and dismissed her counsel on the day of trial, proceeding without objection. Furthermore, the trial court noted the "plethora of evidence" supporting the termination of the shared parenting plan and the award of custody to appellee. The trial court deemed any error regarding the magistrate's findings or rulings on procedural issues to be "at most," harmless error. The trial court denied the request for a new hearing, and affirmed the magistrate's decision.

{¶ 21} This appeal followed.

## II. Assignments of Error

{¶ 22} In challenging the trial court's judgment, ordering a change in custody, appellant asserts the following as error:

Assignment of Error One: The trial court erred and violated appellant's right to Due Process in violation of the 14th Amendment to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution, when it forced appellant to represent herself at a custody hearing.

Assignment of Error Two: The magistrate and trial court erred in preventing appellant from cross-examining father on issues related to his drug trafficking and abuse of appellant.

10.

Assignment of Error Three: The trial court failed to find that terminating the SPP is in the child's best interest, failed to address written objections, and failed to analyze any statutory best interest factors.

Assignment of Error Four: The trial court and magistrate erred in finding that the child's best interests required termination of a shared parenting plan.

### III. Analysis

### 1. Continuance

{¶ 23} In her first assignment of error, appellant argues the trial court erred and violated her due process rights by "forcing" her to represent herself at the custody hearing without granting her request for a continuance. To the extent that appellant implies any right to an attorney, we note that no such right exists in this type of custody proceeding between parents. *See T.M. v. J.H.*, 6th Dist. Lucas Nos. L-10-1014, L-10-1034, 2011-Ohio-283, ¶ 80, citing R.C. 2151.23(A)(2); R.C. 2151.352.

{¶ 24} Appellant mischaracterizes the facts, arguing she was "forced" to represent herself when, in fact, she desired to represent herself. Appellant discharged her attorney at the start of trial, and raised no objection to proceeding pro se, that day. She had her witness in attendance and ready to testify, and conducted herself at all times as a party wishing to proceed to trial. Appellant's attorney, however, requested a continuance to provide appellant time to prepare to act as her own attorney, prior to exiting the trial. The

11.

trial court did not grant a continuance, but instead noted the lack of any objection to proceed to trial.

{¶ 25} We review the trial court's denial of a continuance for an abuse of discretion. *In re May.R.*, 6th Dist. Lucas No. 2019-Ohio-3601, ¶ 25, citing *In re Edward M.*, 6th Dist. Lucas Nos. L-04-1282, L-04-1304, 2005-Ohio-3354, ¶ 21, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). To find an abuse of discretion, we must find the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 26} Pursuant to Juv.R. 23, a continuance should be granted "only when imperative to secure fair treatment for the parties." Appellant argues an amorphous due process violation, based on the trial court's failure to grant a continuance, which prevented her from further investigating issues such as the LCCS reports or the GAL's recommendation she receive mental health treatment. Furthermore, despite arguing a desire to retain new counsel, the record clearly indicates that appellant chose to represent herself at trial, discharging her attorney at the start of the proceeding. Thus, she must accept the results, including any errors or mistakes caused by self-representation. *Holman v. Keegan*, 139 Ohio App.3d 911, 918, 746 N.E.2d 209 (6th Dist.2000).

{¶ 27} We previously found the denial of a continuance proper in a custody hearing where "the reason for the request" was "in the hands of the party requesting a continuance." *T.M. v. J.H.*, 6th Dist. Lucas Nos. L-10-1014, L-10-1034, 2011-Ohio-283, ¶ 91 (finding the timing of withdrawal of counsel and request for continuance for new

12.

counsel was within control of party seeking the continuance). As noted by the trial court, the matter had also been pending for over a year, appellant had counsel as she prepared for trial, and appellant appeared at the start of trial with counsel, but discharged her attorney prior to the start of the proceeding.

{¶ 28} Appellant argues she needed a continuance so she would not have to represent herself, but she caused the claimed crisis by discharging her attorney on the day of trial. Appellant's argument regarding access to records, moreover, is not persuasive. She argues prejudice and failure of due process because she could not review the GAL report, therapy records, or LCCS records, but only the GAL report was introduced at trial. Furthermore, while appellant characterizes the GAL report as "lengthy," the document itself consisted of 10 pages of narrative, with the rest of the report made up of parties' personal identifier information forms filed with the court, negative drug screen results for both appellant and appellee, and the paternity report, identifying appellee as Ar.T.'s father.

{¶ 29} Much of the information included in the GAL report was also known to appellant, as demonstrated by her statements at trial, and she points to no piece of information that caused surprise or prevented effective questioning or cross-examination of witnesses. Instead, appellant's focus is on disputing the substance of the GAL's findings, arguing the GAL provided no documentary proof for incidents that supported her findings, including the fact the LCCS complaints were unsubstantiated or that appellant damaged appellee's barber tools. The GAL testified that she reviewed the

13.

records, including the LCCS files and the various court filings. She also viewed the barbershop video, including video of appellant damaging property. The GAL had no obligation to further prove or disprove the LCCS findings, or introduce court records from separate cases, as a GAL's duty in that regard extends only to review of the pertinent records to support the recommendation provided to the court. *See* Sup.R. 48(D)(13).

{¶ 30} While appellant did not have the advantage of a legal education or training, she had ample notice of the proceedings. The trial court, moreover, provided appellant sufficient time to review the GAL report, granted her latitude at trial by permitting narrative testimony and statements, and did not inhibit appellant's ability to conduct proper questioning and cross-examination of witnesses. The proceedings, accordingly, satisfied the requirements of due process. *See L.W. v. L.B.,* 6th Dist. L-09-1309, 2010-Ohio-2796, ¶ 16 ("at a minimum, due process requires notice of a proceeding and an opportunity to be heard."). (Citation omitted.) Based on the record, we find no abuse of discretion by the trial court in denying a continuance, and appellant's first assignment of error is not well-taken.

## 2. Precluded Testimony

{¶ 31} In her second assignment of error, appellant argues the trial court prevented her from questioning appellee regarding his prior drug trafficking or his alleged abuse of appellant, resulting in prejudice to her case. Appellant contends that, had the magistrate heard appellee's responses regarding these issues, it would have had "a significant effect"

14.

on the findings and judgment. "[T]he admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

{¶ 32} Upon review of the record, it is clear that appellant enjoyed great latitude in questioning witnesses. Appellant questioned Anisha S. regarding an incident of abusive conduct by appellee, and appellant, herself, had an opportunity to testify. Appellant also posed questions to appellee regarding specific circumstances she now argues are indicative of drug trafficking. Appellant questioned appellee regarding his income and his ability to purchase a home with those reported earnings. She also asked appellee about a gunshot wound he sustained to his leg, and questioned why he did not prosecute the unknown assailant. She attempted to inquire directly about drug trafficking, but the trial court sustained an objection to this questioning.

{¶ 33} It is unclear just what evidence appellant would have introduced, as appellant provided no proffer, and the document attached as an exhibit to her objection included no admission of guilt by appellee. The fact that appellee had a prior drug conviction was noted in an earlier GAL report, included as part of the report referenced at trial. The record also reflected that appellee tested negative for drug use, as did appellant. Furthermore, appellant elicited testimony regarding appellee's access to funds and the fact appellee was the victim of a shooting. While appellant argues that exploring the

15.

issue of drug trafficking would have changed the trial court's determination, the events she wished to explore predated the parties' custody dispute, and prior criminal conduct is not disqualifying for purposes of a child custody determination. *See, e.g., Compton v. Eckman*, 2d Dist. No. 11 MA 94, 2012-Ohio-1506, ¶ 51 (despite mother's criminal history related to her drug use, designating her custodial parent was in best interest of the child).

{¶ 34} Considering the evidence the trial court did consider, we find no material prejudice resulting from the trial court's refusal to permit additional questions to demonstrate appellee's past criminal history.[7] Therefore, we find no abuse of discretion by the trial court, and appellant's second assignment of error not well-taken.

### 3. Termination of the Shared Parenting Plan

{¶ 35} In her third and fourth assignments of error, appellant argues that the trial court failed to consider the "best interest" factors under R.C. 3109.04(E)(2)(c), failed to separately address each of appellant's written objections to the magistrate's decision, and erred in finding the child's best interests required termination of the shared parenting plan. We review a trial court's decision on a motion for modification of parental rights for an abuse of discretion. *Jo.W. v. Je.W.*, 6th Dist. Lucas No. L-14-1095,

---

[7] The question appellee did answer, which the trial court ordered stricken, was a denial that appellee was "still" trafficking in drugs. It is unclear how additional questioning would have produced a different answer.

16.

2015-Ohio-1058, ¶ 21, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraphs one and two of the syllabus.

{¶ 36} Appellant challenges the adequacy of the trial court's ruling as lacking sufficient reference to the statutory "best interest" factors and lacking specific findings as to each of appellant's objections to the magistrate's decision. In support, appellant relies on *Recny v. Finley*, 6th Dist. Sandusky No. S-12-047, 2013-Ohio-5349, in which we reversed and remanded proceedings for the trial court to make its own factual findings in ruling on objections, based on the factors of R.C. 3109.04. In *Recny*, however, the appellant had requested findings of fact and conclusions of law. *Id*. at ¶ 27. Appellant failed to make such a request in this case.

{¶ 37} Here, the magistrate found, "[b]y a preponderance of the evidence since the prior order issued" that "it is in the best interest of the child to terminate the shared parenting plan." The magistrate further found a "substantial change of circumstances in the life of the child, and it is in the child's best interest to modify [appellant's] parenting time and to award [appellee] legal custody of the child." The magistrate also made additional, more specific, written filings to support its conclusion.

{¶ 38} The magistrate considered appellant's anger issues and "possible mental health issues," that manifested in "harassing and manipulative behaviors" toward appellee which appellant failed to recognize as harmful to Ar.T. The magistrate further noted appellant's history of unsubstantiated LCCS reports and unsuccessful petitions for civil protection orders and domestic violence charges, which the GAL concluded were

17.

false and "demonstrated an unhealthy pattern of behavior" by appellant. Additionally, the magistrate found that appellee was the victim of assaults by appellant's family, and appellant destroyed appellee's barber tools. The magistrate found that Ar.T. had better school attendance during appellee's weeks, and noted a specific instance in which appellant's conduct caused Ar.T. to cry throughout a school ceremony after appellant disagreed with appellee over which clothing Ar.T. would wear for the event. Ultimately, the magistrate agreed with the GAL's recommendation to terminate the shared parenting plan and award custody of Ar.T. to appellee "to protect the child from further emotional distress caused by [appellant's] harmful choices and behavior toward [appellee]."

{¶ 39} In addressing appellant's objections to the magistrate's decision, the trial court addressed the denial of a continuance and her request for a new hearing, finding no material prejudice to appellant as a result of proceeding to trial without counsel. Additionally, after an independent review of the record, the trial court affirmed the magistrate's decision, specifically referencing the July 19, 2019 judgment entry and supplemental order, finding "a plethora of evidence to support terminating the parties' Shared Parenting Plan and granting legal custody to [appellee]." *See N.S. v. C.E.*, 6th Dist. Huron No. H-17-006, 2017-Ohio-8613, ¶ 14, citing *Mogg v. McCloskey*, 7th Dist. Mahoning No. 12 MA 24, 2013-Ohio-4358, ¶ 22 ("trial court's entry is insufficient if it omits a required finding and does not 'reference, specifically incorporate, or attach' the magistrate's decision.").

18.

{¶ 40} Appellant requested no specific findings by seeking written findings of fact and conclusions of law, pursuant to Civ.R. 52. Appellant, furthermore, concedes that without such a request, a trial court may issue a general decision. *See R.E. v. H.F.*, 6th Dist. Lucas No. L-16-1232, 2017-Ohio-2815, ¶ 21, citing *Sayre v. Hoelzle-Sayre*, 100 Ohio App.3d 203, 212, 653 N.E.2d 712 (3d Dist.1994), quoting Civ.R. 52 (additional citation omitted). "The purpose of the rule is therefore clear: to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment." *Werden v. Crawford*, 70 Ohio St.2d 122, 124, 435 N.E.2d 424 (1982). Without a request for Civ.R. 52 findings of fact and conclusions of law, we presume the trial court considered all the relevant statutory factors." *Sayre* at 212; *see also R.E. v. H.F.* at ¶ 21.

{¶ 41} Appellant next argues that the evidence in the record fails to support the magistrate's findings. Her argument, however, demonstrates disagreement with the weight afforded to her evidence or dispute of the credibility of appellee's evidence, and not a lack of evidence. She also argues that the trial court failed to make a "best interests" determination according to the clear and convincing evidence standard.

{¶ 42} The trial court made its determination pursuant to R.C. 3109.04(E)(2)(c), which requires only a "best interests of the child" determination. *See Bruns v. Green*, Slip Opinion No. 2020-Ohio-4787, ¶ 12 (termination of a shared-parenting plan is determined based on the best interests of the child, and is not subject to any "change of circumstances" requirement, applicable to a shared-parent *decree*, under R.C.

19.

3109.04(E)(1)(a)).  Whether appellee's evidence was more credible or entitled to greater weight, moreover, is a matter for the trial court to determine.  (Citations omitted.) *Charles H.H. v. Marie S.*, 6th Dist. Lucas No. L-02-1312, 2003-Ohio-3094, ¶ 6.

{¶ 43} Appellant cites to evidence adduced at trial that favored her, while attempting to explain away evidence that did not.  She argues that the trial court's findings "completely ignore anything positive about appellant."  The trial court focused on the "best interests" factors, however, and our review of the record demonstrates ample support for the trial court's findings.  Accordingly, we find no abuse of discretion by the trial court in awarding custody to appellee as in Ar.T.'s best interests, and appellant's third and fourth assignments of error are not well-taken.

### IV.  Conclusion

{¶ 44} For the forgoing reasons, the November 15, 2019 judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.