OPINION
 I. Facts/Procedural Posture {¶ 1} Defendant-appellant, Phil Cichanowicz (hereinafter "Phil"), appeals the judgment of the Crawford County Court of Common Pleas affirming the Magistrate's order granting in part and denying in part his motion to modify parental rights. For the reasons that follow, we affirm.
 {¶ 2} Phil and plaintiff-appellee, Lisa Cichanowicz (hereinafter "Lisa"), were married on May 9, 1987. (Doc. No. 1). Three children were born as issue of the marriage: Marie Elise Cichanowicz (d.o.b. 7/13/90) (hereinafter "Marie"); Nicole Erin Cichanowicz (d.o.b. 10/22/92) (hereinafter "Nicole"); and Sarah Ann Cichanowicz (d.o.b. 6/17/96) (hereinafter "Sarah") (hereinafter collectively "the children"). (Id.). On May 3, 1999, the parties were divorced, and Lisa was named sole residential parent and legal custodian of the parties' three minor children. (Doc. No. 111 at 2). Since the divorce, Lisa has remarried to Craig Lutz. (Id. at 3).
 {¶ 3} On April 12, 2005, Phil filed a motion with the trial court requesting a modification of custody and seeking to be named the children's residential parent. (Doc. No. 78). On December 12, 2005, the Magistrate ordered the parties to attend counseling in an effort to improve their communication. (Doc. No. 91). The case was stayed and then reactivated on June 30, 2006 after counseling was terminated. (Doc. No. 111 at 2). The matter was scheduled for hearing in *Page 3 
September 2006, but the hearing was continued because Phil had changed counsel and a custody evaluation needed to be completed. (Id.).
 {¶ 4} The motion came on for hearing on November 15, 16, and 28, 2006 and January 25, 2007 before the Magistrate. (Id.). On March 2, 2007, the Magistrate ordered that Lisa remain the children's residential parent; however, the Magistrate also ordered: joint counseling for Phil and the children; individual counseling for Lisa; and more visitation time between Phil and his children. (Id. at 14-17). On March 15, 2007, Phil filed objections to the Magistrate's order with the trial court. (Doc. No. 113). On January 29, 2008, the trial court overruled Phil's objections and adopted and approved the Magistrate's Decision. (Doc. No. 135).
 {¶ 5} On February 28, 2008, Phil filed his notice of appeal to this Court. Phil now appeals and asserts four assignments of error for review. We have elected to address Phil's assignments of error out of the order they appear in his brief and combine his assignments of error together where appropriate. II. Applicable Statutes/Standards ofReview
 {¶ 6} The allocation of parental rights and responsibilities for purposes of divorce, legal separation, and annulment proceedings are governed by R.C. 3109.04. Subsection (E)(1)(a) provides, in pertinent part:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that *Page 4 were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
"[W]hether there are changed circumstances is a threshold inquiry that must be determined prior to examining whether a change in parental responsibility would be in the best interests of the child." Fox v.Fox, 3d Dist. No. 5-03-42, 2004-Ohio-3344, ¶ 38, citing Clark v.Smith (1998), 130 Ohio App.3d 648, 653, 720 N.E.2d 973. In order to have a change in circumstances, "`the change does not have to be quantitatively large, but rather, must have a material effect on the child.'" In re Tolbert v. McDonald, 3d Dist. No. 1-05-47,2006-Ohio-2377, ¶ 31, quoting Green v. Green, 3d Dist. No. 14-03-29,2004-Ohio-185, ¶ 7. In determining whether the *Page 5 
modification is necessary to serve the best interest of the child, the court is guided by the factors listed in R.C. 3109.04(F)(1)(a)-(j).
 {¶ 7} "If competent, credible evidence supports the trial court's findings, its decision will not be reversed on appeal as being against the manifest weight of the evidence." Duer v. Moonshower, 3d Dist. No. 15-03-15, 2004-Ohio-4025, ¶ 15, citing Hoitt v. Siefer (1995),105 Ohio App.3d 104, 107, 663 N.E.2d 717. "Additionally, in custody modification cases, an appellate court must give the trial court the `utmost respect' because it has the best opportunity to gauge the credibility, attitude, and demeanor of each witness." Id., citing Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846, and Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Consequently, "[a] trial court ruling concerning a modification of parental rights should not be overturned absent an abuse of discretion." Fox, 2004-Ohio-3344, ¶ 36, citing Masters v. Masters (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 III. Analysis ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DISREGARDING THE FINDINGS AND CONCLUSIONS OF THE GUARDIAN AD LITEM'S REPORT. *Page 6 
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DISREGARDING THE FINDINGS AND CONCLUSIONS OF THE CUSTODY EVALUATION REPORT AND TESTIMONY OF THE CUSTODY EVALUATOR, BARB WIREBAUGH.
 {¶ 8} In his first assignment of error, Phil argues that the Magistrate erred by disregarding the findings and conclusions of the guardian ad litem's (GAL) report. Specifically, Phil argues that the Magistrate inappropriately rejected the report because she failed to give her reasons for doing so. Phil also argues that the Magistrate mischaracterized the GAL report and erred in rejecting it. Furthermore, Phil argues that the trial court failed to conduct an independent review of the record when he filed his objections.
 {¶ 9} In his second assignment of error, Phil argues that the Magistrate erred in disregarding the findings and conclusions of the custody evaluator, Barb Wirebaugh. Specifically, Phil argues that the Magistrate incorrectly concluded that Wirebaugh was biased, because she incorrectly determined that Wirebaugh's recommendation was rendered after only meeting with Phil. Phil further argues that, contrary to the Magistrate's conclusions, Wirebaugh was an independent, objective expert witness.
 {¶ 10} As an initial matter, we note that Lisa has not filed a brief in this Court. When an appellee fails to file a brief, App. R. 18(C) provides: "the court may accept the appellant's statement of the facts and issues as correct and reverse *Page 7 
the judgment if the appellant's brief reasonably appears to sustain such action." Nonetheless, we are not persuaded that Phil's brief reasonably appears to sustain a reversal.
 {¶ 11} Phil's arguments lack merit both factually and legally. Phil's assertion that "[t]he trial court's decision disregarded the recommendations of the GAL" is incorrect. (Appellant's Brief at 13). The Magistrate did consider the GAL report, but found that its conclusions were not supported by the evidence. The Magistrate explained that:
 The guardian ad litem in his written report filed August 21, 2006 recommended "custody of these three children be given to their father and that their mother receive companionship as allowed by local rule." The evidence does not support some of his conclusions regarding the family situation and dynamics. While he characterized mother as having unilaterally "had Marie put on Zoloft," the evidence indicates that Marie's doctor recommended and prescribed Zoloft after several visits with Marie and at a time when the physician was very concerned about Marie's feelings and behaviors. Again, it is appropriate for a sole residential parent to make medical decisions. This was not a situation in which the physician said "we should think about prescribing Zoloft for Marie, think it over and let me know." This was a situation in which the physician prescribed Zoloft for Marie. This was something of which the non-custodial parent needs to be informed but not necessarily consulted about pre-prescription. Also there was no evidence that the inappropriate behaviors that Marie was engaging in at Father's residence (sneaking out and partying) were occurring when Marie was at Mother's residence as well. The evidence was that Marie suddenly wanted to spend more time with Father, apparently because she was able to get away with more when she was there than when she was at Mother's. While Father asserts that Mother acts more like a friend to the children than a parent, it is concerning to the undersigned that Father told *Page 8 Marie she could have a piercing as long as she paid for it, while Mother tells her that regardless of who pays for it she will not be doing this until she is 18. While the guardian ad litem represents that Mother told Marie that if she went to live with her Father she could never come back, the evidence is that Mother told Marie to consider her decision carefully because her Father would not be willing to just allow her to return to Mother's custody if she changed her mind. This is not an inappropriate or unrealistic statement to make to a child, a teenager, who is saying she wants to live with the other parent.
(Mar. 2, 2007 Magistrate Decision and Order (Doc. No. 111) at 12-13). The Magistrate's findings were supported by the evidence. Lisa testified that Dr. Bowers prescribed Zoloft for Marie. (Nov. 15, 2006 Tr. Vol. I at 23); (Nov. 28, 2006 Tr. Vol. III at 71); (Jan. 25, 2007 Tr. Vol. IV at 15-17). Lisa also submitted into evidence several medical reports, which indicated that Dr. Bowers saw Marie several times before prescribing the medication. (Plaintiff's Ex. AA); (Nov. 15, 2006 Tr. Vol. I at 23, 114); (Jan. 25, 2007 Tr. Vol. IV at 15-17). Furthermore, the medical records also indicate that Lisa signed a medical release in order to provide Dr. Bowers with medical reports from Dr. Rothman, Marie's psychologist, as well. (Id.). Accordingly, the Magistrate's finding that Marie was prescribed Zoloft by a physician was supported by the record.
 {¶ 12} The Magistrate's finding that Marie was leaving Phil's house was also supported by the evidence. Lisa testified that Marie's cousin called her and informed her that Marie was sneaking out of Phil's house. (Nov. 28, 2006 Tr. Vol. III at 92). Lisa also testified that during the time Marie was sneaking out of Phil's *Page 9 
house Marie wanted to spend more time at Phil's and was spending significant amounts of time on the internet there. (Id. at 94). Lisa also testified that Marie was not sneaking out of her house. (Id. at 117).
 {¶ 13} The Magistrate's finding with respect to the conversation Lisa had with Marie concerning her possible move to her father's house is also supported by the record. Lisa explained that she cautioned Marie about making a hasty decision to live with Phil:
 My comment to her, when I told Marie it was two years ago. Marie was 14 years old, and Phil had initially filed for the custody motion, and what I told Marie was that I really wanted her to think about it. At the time she seemed to be leaning towards living with Phil, and I felt — my own opinion was that she wanted not to live with Phil because she had a good relationship or wanted a good relationship with Phil, but it was because she was getting into trouble. She didn't like our rules, a lot stricter.
 * * *
 So, anyway, trying to get her to think about her decision as far as coming to the Court and saying she wanted to live with her dad. I didn't say to her she wouldn't be welcome in my home, what I said to her was really think about that decision because if you decide to live with you dad, okay. He's not going to let you just come back. He's not going to say, oh, you're unhappy, so now you can go back and live with your mom. That's the way I feel. * * * That's what I said to her. I said, if you say you want to live with your dad, you won't be able to come back. Not that I don't want you to come back, but through all of this, the years and years it takes, you won't be able to come back. *Page 10 
(Jan. 25, 2007 Tr. Vol. IV at 19-20). Accordingly, the Magistrate's findings of fact relating to the GAL report are supported by the record and Phil's arguments are factually inaccurate.
 {¶ 14} Phil's assertion that the Magistrate erred in finding that Wirebaugh's report was biased is without merit as well. The Magistrate decided not to adopt Wirebaugh's recommendation that custody of the children be modified for two primary reasons. First, the Magistrate found that Wirebaugh's suggestion of Parental Alienation Syndrome ("PAS") was unreliable because Wirebaugh reached this conclusion without interviewing Lisa. (Mar. 2, 2007 Magistrate Decision and Order (Doc. No. 111) at 10). The Magistrate's finding is supported by the evidence. Although Wirebaugh's report appears to indicate that she met with Lisa prior to issuing her status report, Wirebaugh testified that she did not meet with Lisa. (Jan. 25, 2007 Tr. Vol. IV at 34, 54); (Defendant's Ex. 25 at 5). In addition, even viewed in a light most favorable to Phil, the report only indicates that Lisa "attended one session," but the report further indicates that Lisa "has not yet completed [the parent interview] portion of the evaluation." (Defendant's Ex. 25 at 5). Furthermore, contrary to Phil's assertions, Wirebaugh testified that she did not have access to collateral information sources with respect to Lisa to support the conclusions in her status report. (Id. at 62-63). Under these circumstances, the Magistrate could find that Wirebaugh's report was unreliable. *Page 11 
 {¶ 15} Second, the Magistrate found that, even assuming that PAS existed in this case, those cases "that supported reallocation of parental rights and responsibilities based on a psychologist's testimony regarding parental alienation dealt with extremely concerning fact patterns far beyond anything reported in this case." (Mar. 2, 2007 Magistrate Decision and Order (Doc. No. 111) at 10). Although some evidence presented in this case supported Wirebaugh's PAS diagnosis, the Magistrate's determination that the facts of this case would not merit a transfer of custody was supported by the overall record.
 {¶ 16} Furthermore, Phil's argument lacks merit legally because a trial court is not bound by the GAL's or custody evaluator's recommendation as he suggests. Galloway v. Khan, 10th Dist. No. 06AP-140, 2006-Ohio-6637, ¶ 70, citing Baker v. Baker, 6th Dist. No. L-03-1018, 2004-Ohio-469, ¶ 30; Valentine v. Valentine, 12th Dist. No. CA2004-12-314, 2005-Ohio-6163, ¶ 23. Additionally, "[a] trial court determines the guardian ad litem's credibility and the weight to be given to any report." Khan, 2006-Ohio-6637, at ¶ 70, citingBaker, 2004-Ohio-469, at ¶ 30. See, also, Ferrell v. Ferrell, 7th Dist. No. 01-AP-0763, 2002-Ohio-3019, ¶ 43. The Magistrate, herein, considered but ultimately rejected the GAL's and custody evaluator's recommendations. Because we have found that the Magistrate's reasons for rejecting these recommendations were based upon competent, credible evidence, we find that the trial court did not err in doing so. *Page 12 
 {¶ 17} Finally, Phil argues that the trial court failed to conduct an independent review of the record when he filed his objections. This is incorrect.
The trial court's entry specifically states:
 Pursuant to Civ. R. 53(D)(4)(d) and Ohio law (see: Reese v. Reese, 2004-Ohio-1395) the Court has conducted an independent review of the case file, transcript of proceedings and evidence, as well as the Magistrate's findings of fact and conclusions of law herein in order to reach an independent judgment on the merits of each of the Defendant's Objections. Further, this Court has compared the facts adduced by the testimony of all the witnesses and all other evidence with the findings of fact made by the Magistrate in her Decision as well as verified the accuracy of her conclusions of law and her application of R.C. 3109.04(F)(1) to those facts.
(Jan. 29, 2008 JE at 2). Accordingly, Phil's assertion is without foundation.
 {¶ 18} Phil's first and second assignments of error are, therefore, overruled.
 ASSIGNMENT OF ERROR NO. III THE TRIAL COURT'S DENIAL OF DEFENDANT-APPELLANT'S MOTION TO MODIFY CUSTODY IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 19} In his third assignment of error, Phil argues that the trial court's denial of his motion to modify custody was contrary to the manifest weight of the evidence. Specifically, Phil argues that the Magistrate's decision is "simply `more of the same,'" and Lisa will continue to be uncooperative and deny him visitation. In support of his argument, Phil relies exclusively on the GAL's and the custody *Page 13 
evaluator's reports, which the Magistrate found to be unreliable and not supported by the evidence. We find Phil's argument lacks merit.
 {¶ 20} Prior to modifying the allocation of parental rights and responsibilities, "the court must find, `based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree,' that (1) a change in circumstances has occurred; (2) a change in the parental rights and responsibilities is in the best interests of the child; and (3) one of the factors listed in R.C. 3109.04(E)(1)(a)(i)-(iii) applies." Livermore v. Livermore, 3d Dist. No. 3-05-17, 2006-Ohio-485, ¶ 8, quoting R.C. 3109.04(E)(1)(a). "If competent, credible evidence supports the trial court's findings, its decision will not be reversed on appeal as being against the manifest weight of the evidence." Duer, 2004-Ohio-4025, at ¶ 15, citingHoitt, 105 Ohio App.3d at 107.
 {¶ 21} Lisa and Phil stipulated that a change in circumstances had occurred; however, the Magistrate found that "[i]t [was] not in the best interests of these children to reallocate parental rights and responsibilities to name Father sole residential parent * * *." (Nov. 15, 2006 Tr. Vol. I at 94); (Mar. 2, 2007 Magistrate Decision and Order (Doc. No. 111) at 3, 14). In rendering her determination that the modification of parental rights was not in the children's best interests, the Magistrate made the following R.C. 3109.04(F)(1)(a)-(j) findings:
 6) Each parent wishes to be the sole residential parent of the three (3) minor children. *Page 14 
 7) The undersigned interviewed each of the minor children individually on at least one occasion to ascertain their respective wishes and concerns regarding the allocation of parental rights and responsibilities.
 * * *
 9) The children appear to have normal sibling relationships with each other. They may fight and bicker at times, but they also look out for each other.
 * * *
 11) The children are well adjusted to their home, schools and community. Teachers and principals who testified indicated no problems with the girls academically or socially. None of the children are behavior problems at school or at home. They were all described as hard working and on task at school. They all participate in extracurricular activities.
 * * *
 13) It appears that both parents have been flexible in allowing the other parent to have time outside the court-ordered parenting time schedule occasionally. Likewise, both have at times denied the other additional time with the children for various reasons. Although Father asserts that he would be very flexible, according to his testimony and based on what was learned from the in camera interviews, the children are skeptical that this will be true.
 14) Father is current in the payment of child support.
 15) There are no allegations that either party has been involved in abusing or neglecting a child or any type of domestic violence.
 16) Father lives in Bucyrus, Ohio in the former marital residence. Mother lives in Bucyrus, Ohio also; however, the children attend the Colonel Crawford schools as her residence is in that school district, whereas Father lives in the Bucyrus City *Page 15 School District. While there was no evidence that the children would be open enrolled in Colonel Crawford schools, there was also no evidence that they could not be. There is no evidence that either party intends to relocate. It probably makes little difference as far as Marie is concerned in which of the two (2) school districts she resides since she attends Pioneer Joint Vocational School and both school districts feed into that school; however, it may make a difference to Nikki and Sarah.
 17) There was no evidence that the Mother has continually or willfully denied Father's rights to parenting time, although there has been a great deal of difficulty with communicating regarding parenting time and any changes necessary to adapt to the children's schedules. Father has exercised his four (4) week extended summer parenting time each summer since the parties' divorce, although he believes that Mother has basically mandated the time that this will occur. Mother indicated that she looks at the girls' schedules each year and then gives a schedule to Father. In some years he has sent back a counter proposal and changes have been made. Father admits that Mother sends the initial schedule before he has even given any thought to his summer parenting time. Given their admitted difficulty in communicating, this arrangement seems appropriate. Mother had at times unilaterally advised Father that there would be no visitation on a scheduled weeknight due to the children's activities that night. This might be appropriate if the child had to be at the activity prior to Father's scheduled parenting time; however, if the activity was during Father's time he should be given the opportunity and the responsibility to get the children to their activities. It was not always clear from the testimony whether activities were commencing prior to Father's scheduled time or not. Regarding some of the activities, such as swim team practice, it was clear that the activity began prior to the time that Father would normally pick up the child or children for parenting time. Further when Nikki has cross country or track and has to be on the bus early on Saturday mornings, Mother again seemed to believe that she has the right to unilaterally advise Father that his parenting time would commence at the conclusion of Nikki's activity. Although Mother denies telling Father that this was an activity that she and Nikki were to share, it appears that Nikki may have told *Page 16 Father this. Hence, although Mother is not denying Father parenting time in toto his parenting time is at times trimmed to accommodate Mother's agenda. It is notable that when Mother advised Father that he could not have his Tuesday or Thursday parenting time she offered Wednesday as an alternative that Father often took. It is also interesting that Father is the one who arranged for the children to take swimming lessons during his parenting time against their wishes and Mother never protested or prevented their participation. Now when Mother tells Father that he will not be getting the children on Tuesday and Thursdays because of swim team practice Mother is interfering with his parenting time and denying him parenting time, according to Father. Now that the children are excelling at swimming (Nikki is within 3 seconds of beating a school record!), an activity to which he introduced them, he is unhappy with the effect upon his time with them and, in fact, rarely attends swim meets or any of the children's activities. In a healthier situation where divorced parties are able to communicate effectively regarding issues involving their children, the noncustodial parent often makes these accommodations voluntarily. There is a give and take that allows adaption of the structure to allow for the various activities of all parties and the constant changes in wants and needs of all parties. Pursuant to the custody evaluation and the evidence presented, Father has difficulty with emotions and, on occasion, seems unaware of what is important to each of his children. He apparently did not comprehend the importance to Sarah of his attendance at her pageant in Columbus last summer and had arranged to do a work project at his home when he had a ticket to attend her pageant. Sarah was in tears because he was not there.
 * * *
 22) The undersigned has been a domestic relations magistrate for 12 years and this is one of the most difficult custody matters to come before her. It is difficult to embrace the concept of changing custody of children who are doing well in all respects under the current arrangement except for their relationship with Father. Other than perhaps with Marie, Father does not have a bad relationship with his children. In many respects his *Page 17 relationship with each child is somewhat typical of children of that age — the 10-year old wants to spend time with him, the 14-year would rather not, and the 17-year old wants nothing to do with him. The 14-year old is spending time with him and the 17-year old would be spending time with him but for his own actions. While concurring that it is important for children to have a loving relationship with both parents to insure their development into healthy adults, it seems that this should be possible without a radical removal of the children from the loving, nurturing environment of their Mother's home. Further, the evaluator has warned that, although she is recommending reallocation of parental rights and responsibilities, in the event of such a change, we should anticipate acting out, such as running away, by the two (2) oldest children, Marie and Nikki. While the evaluator refers to Mother as the "alienating parent," she also acknowledges that Father has engaged in behavior that in and of itself has alienated the children. Certainly, in a situation such as this one in which the parents have diametrically opposite personalities with Mother being extremely emotional and Father being just as logical, it is more likely that the children will be well balanced if they have adequate opportunity to spend significant time with each parent. It appears to the undersigned after consideration of all the evidence, the statutory factors, the recommendations of the guardian ad litem and the custody evaluator, that this balance can be achieved without drastically altering the lives of the parties' children. It is not in the best interests of these children to reallocate parental rights and responsibilities to name Father sole residential parent; however, it is in their best interests to adjust parenting time schedules and to implement counseling for Father and children, and, individually, for Mother.
(Doc. No. 211 at 3-14).
 {¶ 22} This Court has independently reviewed the entire record in this case and finds that the trial court's R.C. 3109.04(F)(1)(a)-(j) findings are supported by competent, credible evidence. As such, the Magistrate's best interest of the children finding was not against the manifest weight of the evidence. Duer, 2004-Ohio-4025, *Page 18 
at ¶ 15, citing Hoitt, 105 Ohio App.3d at 107. Since the Magistrate's best interest finding was not against the manifest weight of the evidence, and a finding that modifying custody is in the best interest of the children is necessary for a court to grant a motion to modify parental rights, the trial court's denial of Phil's motion was, likewise, not against the manifest weight of the evidence.Livermore, 2006-Ohio-485, at ¶ 8. Although this Court notes that some inconsistencies existed in the testimony presented, it is the trial court that "has the best opportunity to gauge the credibility, attitude, and demeanor of each witness." Duer, 2004-Ohio-4025, at ¶ 15, citingMiller, 37 Ohio St.3d at 74 and Davis, 77 Ohio St.3d at 418.
 {¶ 23} Phil's third assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. IV THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY ORDERING HIM TO PAY ADDITIONAL GUARDIAN AD LITEM FEES.
 {¶ 24} In his fourth assignment of error, Phil argues that the trial court erred by ordering him to pay additional guardian ad litem fees, which he argues should be paid by Lisa. Phil argues that, on December 4, 2000, the trial court ordered Lisa and him each to pay $250 as an initial deposit for GAL fees. Phil argues that he paid his deposit, but Lisa failed to do so.
 {¶ 25} Overruling Phil's objection to the Magistrate's order that he pay $250 more in GAL fees, an amount which the Magistrate characterized as a "short *Page 19 
fall," the trial court found that Phil agreed to pay one-half of the $903.29 GAL fee in the July 2, 2003 agreed entry. (Jan. 29, 2008 JE); (Doc. No. 70).[1] The trial court also found that the $903.29 GAL fee included the initial $250 deposit that Lisa failed to pay. Under these circumstances, the trial court found that: "the parties essentially agreed to start over"; "[i]f [Phil] * * * intended to receive credit for $250.00 it should have been set forth in the parties Agreed Entry"; and therefore, Phil "may not now assert this claim". (Jan. 29, 2008 JE at 2). We agree that Phil has waived this error by entering the agreed entry.
 {¶ 26} Generally speaking, "[a] party waives any error that he could have, but did not, call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."Butler v. Butler, 4th Dist. No. 02CA2833, 2002-Ohio-5877, ¶ 19, citingStores Realty Co. v. Cleveland (1975) 41 Ohio St.2d 41, 43,322 N.E.2d 629; Van Camp v. Riley (1984), 16 Ohio App.3d 457, 463, 476 N.E.2d 1078. If Phil had objected to the agreed entry, the entry could have been, at that time, modified to address the GAL fee calculation error. Since Phil failed to object then, we find that he has now waived this issue. Furthermore, "where an authorized attorney enters into an agreed entry on behalf of a client, the terms of the entry will be binding upon the client." Doan v. Doan (Oct. 2, 1997), 1st Dist. No. C-960932, at *2, citing McClure v. McClure (1994), *Page 20 98 Ohio App.3d 27, 34, 647 N.E.2d 832. See also, McGee v. McGee,168 Ohio App.3d 512, 2006-Ohio-4417, 860 N.E.2d 1054, ¶ 11; Popovic v.Popovic (1975), 45 Ohio App.2d 57, 341 N.E.2d 341; Butler, 2002-Ohio-5877, at ¶¶ 9-10; Irwin v. Irwin, 5th Dist. No. 04-CA-F-05-040,2004-Ohio-6206, ¶¶ 30-45. Accordingly, Phil is bound to the terms of the agreed entry, which indicated that he was to pay one-half of the GAL fees, including half of Lisa's $250 deposit.
 {¶ 27} Phil's fourth assignment of error is, therefore, overruled.
 IV. Conclusion {¶ 28} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur.
[1] Phil paid $201.65 instead of the ordered $451.65 (half of $903.29), creating the $250 short fall found by the Magistrate. (Doc. Nos. 112, 116). *Page 1