[Cite as *Hare v. Endersby*, 2015-Ohio-5442.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

ROBERT HARE,

    PLAINTIFF-APPELLEE,             CASE NO. 1-15-46

    v.

MICHAEL ENDERSBY,              O P I N I O N

    DEFENDANT-APPELLANT.

---

MICHAEL ENDERSBY,

    PLAINTIFF-APPELLANT,           CASE NO. 1-15-47

    v.

ROBERT HARE,                   O P I N I O N

    DEFENDANT-APPELLEE.

---

Appeals from Lima Municipal Court
Trial Court Nos. 14CVG03007 and 14CVH02759

Judgments Affirmed

Date of Decision: December 28, 2015

---

APPEARANCES:

    *Bruce Comly French* for Appellant Endersby

    *Kevin J. Stotts* for Appellee Hare

**ROGERS, P.J.**

{¶1} Appellant, Michael Endersby, appeals the judgment of the Lima Municipal Court adopting the magistrate's decision, which granted judgment in favor of Appellee, Robert Hare, on Hare's complaint and dismissed Endersby's complaint. In this consolidated appeal, Endersby argues that the trial court erred by (1) finding that there was a mutual agreement to terminate the lease; (2) dismissing Endersby's complaint without hearing and considering all the issues in his complaint; (3) failing to find that Endersby was constructively evicted; (4) hearing Hare's complaint before Endersby's complaint at the consolidated hearing; and (5) allowing a twenty-year-old conviction into evidence in violation of Evid.R. 609(B). For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On September 17, 2014, Endersby filed a complaint in the Lima Municipal Court against Hare, which was assigned Case No. 14CVH02759. In his complaint, Endersby alleged that he was the lessee of real property located at 1168 W. Kibby Street in Lima, Ohio ("the Property"), and that Hare was the lessor. He claimed that Hare unlawfully took possession of the property in violation of the lease. Further, Endersby alleged that personal property was stolen from the Property. Thus, Endersby argued that he was entitled to the return of the Property and other nonspecific remedies.

{¶3} Hare filed his answer on October 7, 2014. In his answer, Hare admitted that a lease existed at one point, but argued that Endersby was no longer the tenant of the Property due to their verbal agreement to terminate the lease. Hare made several other denials and raised numerous affirmative defenses.

{¶4} That same day, Hare filed a complaint in forcible entry and detainer against Endersby in the Lima Municipal Court, which was assigned Case No. 14CVG03007. In his complaint, Hare alleged that he and Endersby had entered into a lease for the Property and that Endersby had breached the terms of the lease by failing to pay timely rent for four months. Hare demanded restitution of the Property and any other costs the court deemed appropriate.

{¶5} Endersby filed a motion to dismiss Hare's complaint for failing to raise it as a compulsory counterclaim to Case No. 14CVH0259 on October 15, 2014.[1]

{¶6} On November 12, 2014, Endersby filed his answer in Case No. 14CVG03007.

{¶7} A consolidated hearing was held in both cases on December 12, 2014 before the magistrate, where the following testimony was heard.

{¶8} Before any testimony was presented, several facts were stipulated by both parties: (1) the dispute centered around the Property; (2) Hare was the owner

---

[1] The magistrate never ruled on this motion. When a trial court fails to rule upon a motion, it will be presumed that the motion was overruled. *Georgeoff v. O'Brien*, 105 Ohio App.3d 373, 378 (9th Dist.1995). Additionally, because Endersby has not presented this as an assignment of error, we decline to address it.

of the Property; (3) the two parties entered into a lease for the Property on June 1, 2014[2]; (4) the relevant terms of the lease lasted from June 1, 2014 until May 31, 2015 and that $500 was to be paid for rent by the first day of each month; (5) Hare had given Endersby a three day notice of eviction on September 15, 2014.

{¶9} After the stipulations were made, the magistrate decided to hear Hare's case first because if the eviction was appropriate, then Endersby's claim would be invalid. Then, Hare proceeded with his case.

{¶10} Hare was the first witness to testify on his own behalf. Hare testified that when Endersby contacted him about renting the Property the prior tenant had not completely moved everything out of the building. The two walked through the Property and Endersby indicated to Hare that he wanted to rent the Property. According to Hare, Endersby was in a rush to get a deal done because he had to go to Canada to farm. The two parties agreed that rent would be $500 a month. Hare stated that his daughter-in-law drafted the lease and that both men signed the lease. He testified that Endersby tendered him $1,200 total: $500 for the first month's rent; a $500 security deposit; and a $200 utility deposit. According to the lease, rent was due on the first of the month.

{¶11} Hare testified that he later left for Florida around May 28, 2014. He stated that he returned to Ohio on either June 12 or June 13, 2014. Hare added that he was contacted by Endersby approximately on June 14, 2014. According to

---

[2] This date was later contradicted by both parties who testified that although the lease was to begin June 1, 2014, they actually signed the lease sometime in either April or May 2014.

Hare, the two men met at the Property so Hare could give Endersby the keys to the Property. While the two were walking, Hare testified that he noticed that the side door to the garage had been opened. He stated that Endersby walked into the garage and stated that his furniture had been stolen. Hare explained that sometime in the middle of May 2014 Endersby had called and asked Hare if Endersby could store some furniture in the Property's garage. Hare stated that he was okay with this. Returning to the point when the two men were walking throughout the house, Hare testified that he could not figure out how the furniture got into the garage in the first place since he had the only key. Further, Hare claimed that he never saw any furniture in the garage prior to or on that day. Hare added that Endersby paid him $500 for June's rent that same day. Hare admitted that he and Endersby had modified the start date for the lease to May 15, which was when Endersby said the furniture would be delivered.

{¶12} Hare testified that approximately three days later he received a phone call from Endersby complaining about the Property. Specifically, Endersby was complaining about the garage door, the dog smell from the prior tenant, and other issues. During this phone conversation, Hare stated that he told Endersby that he would just give Endersby his $500 back from the other day. The two men engaged in two more phone conversations and Endersby agreed to meet Hare at Hare's house. According to Hare, Hare told Endersby that he was sorry that the deal was not working and handed Endersby $500 in cash. Hare testified that his

wife, Rosemary Hare ("Rosemary"), witnessed him counting the money earlier in the night. He explained that he did not return the $700 in security/utility deposits because Endersby still had the keys to the Property. He told Endersby that he would return the deposit money after Endersby returned the keys. According to Hare, the two agreed that Endersby would remove his belongings from the Property in the next day or so. Hare testified that his understanding was that when Endersby accepted the $500 the two agreed to terminate the lease.

{¶13} Hare stated that he rented the Property to Robert Mitchell on July 3, 2014. Hare added that he was unaware of any property that remained in the house or garage.

{¶14} Hare testified that he received a certified mailing from Endersby on July 15, 2014. Hare stated that inside the envelope was a check for $500 and a notation stating that it was for July 2014 rent. In response, Hare explained that he had Ed Pedlow, his attorney, write a letter to Endersby rejecting the check. Hare testified that he never cashed the check or instructed Pedlow to do so on his behalf. Assuming, arguendo, that the lease was not terminated by mutual agreement, Hare stated that this payment was still considered late under the lease agreement. Hare added that he had one of his employees, Butch Jackson, hand deliver the letter and check to Endersby.

{¶15} Hare testified that Pedlow received a check for $500 on September 4, 2014 from Endersby. Hare explained that he instructed Pedlow not to cash the check.

{¶16} On cross-examination, Hare stated that he and Endersby first met during the first week of May 2014 to discuss leasing the Property. Further, he admitted that the two signed the lease agreement that day.[3] He also admitted that because of the modification involving the furniture the payment date was backed from June 1 to May 15, 2014. Hare testified that he believed Endersby thought the monthly due date was changed to the 15th of the month because Endersby had paid him in the middle of June for the following month's rent.

{¶17} Hare admitted that when Endersby paid him the $500 in the middle of June that he believed this payment was for June 15 through July 15, 2014, which goes against the terms of the lease. He testified that he had the whole entire house cleaned from top to bottom to accommodate Endersby, but ultimately Endersby was still having problems.

{¶18} On re-direct-examination, Hare stated that he never received a payment during August. Rather, he explained that a payment was sent to Pedlow on September 4, 2014 for rent.

{¶19} Rosemary was the next witness to testify on behalf of Hare. Rosemary testified that she watched Hare count out Endersby's money the night

---

[3] It is clear from the lease, which was admitted into evidence, that no date is indicated as to when it was signed by either party.

the two men met in Hare's garage. She stated that she saw the two men in the garage and watched Hare hand Endersby the money. She explained that she was able to see the two men through the kitchen window.

{¶20} On cross-examination, Rosemary admitted that she did not know Endersby. She also admitted that she only knew that Endersby was supposedly coming to see Hare, but she did not know whether Endersby was the man that came.

{¶21} Robert Mitchell was the next witness to testify on behalf of Hare. Mitchell testified that he moved into the Property in early July 2014. Specifically, Mitchell stated that he paid rent on July 3, 2014. Mitchell testified that there was nothing inside the house when he moved in, but that he did see some furniture in the garage. This included, "a mattress, 2 box springs, a bed frame, a dresser and there was another dresser but there was [sic] no drawers with the dressers, and a table and 4 chairs." Trial Tr., p. 58. Mitchell added that the garage door was broken and could not be locked.

{¶22} One day in September, Mitchell testified that Endersby approached him and told him that Endersby was armed and that Endersby wanted to know what happened to his furniture. Mitchell said that he told Endersby that the garage was right there and it turned out that the furniture was all gone. Mitchell stated that at one point he tried to report the theft to the police, but they told him there was nothing he could do because he was not the owner.

**{¶23}** Butch Jackson was the final witness to testify on behalf of Hare. Jackson testified that he was instructed by Hare to give Endersby a sealed envelope containing the July check sent by Endersby to Hare. He stated that he walked over to Endersby's business and handed him the envelope. Jackson added that Endersby threw the envelope on the ground, stated he did not want it, and said that he was going to sue Hare. Jackson explained that he picked up the envelope and gave it back to Endersby. This time, Endersby shoved the envelope down Jackson's shirt, and Jackson left.

**{¶24}** On cross-examination, Jackson admitted that he never saw the contents of the envelope. At the conclusion of Jackson's testimony, Hare rested.

**{¶25}** Endersby was the sole witness to testify on his behalf. Endersby testified that he first went to look at the Property with Hare on April 28, 2014. He said that he remembered the exact date because the next day he had to leave for Canada to go farming. He acknowledged that the prior tenant was still in the Property at the time, but he explained that he wanted to get the Property before it was advertised for rent. Endersby testified that the two men talked about the dog smell and other concerns and that Hare agreed to alleviate the problems. Endersby confirmed that he and Hare entered into a lease agreement on that day.

**{¶26}** Although the terms of the lease provided otherwise, Endersby testified that he believed the rent payments were due on the 15th of the month pursuant to a verbal agreement between he and Hare. Endersby stated that he

returned from Canada on June 17 and that he met with Hare again on June 18, 2014. On June 18, 2014, Endersby testified that he tendered $500 in cash for the period of June 15 to July 15, 2014. Endersby added that Hare accepted the money. Endersby explained that Hare did not complain about the rent payment being late.

**{¶27}** Endersby admitted that he visited Hare at Hare's home to discuss problems he was having with the Property, including the stolen furniture and dog smell, on June 24, 2014. Regarding the furniture, Endersby testified that he discovered the furniture was stolen on June 23, 2014 and he reported it to the police on that day. To prove that the discovery of the theft occurred when he said it was, as compared to Hare's statement, Endersby stated that he had a copy of the police report that was filed. He clarified that only three pieces were stolen from "a whole house full." *Id.* at 78. Sometime during the day, on June 23, 2014, Endersby testified that he called Hare to discuss the problems and Hare told him " 'Well, I don't think I can make you happy. I'm just gonna' give your money back.' " *Id.* at p. 81.

**{¶28}** Endersby testified that he agreed over the phone to meet with Hare at his house on June 24, 2014 since Endersby was going to be driving near the vicinity of Hare's house. Upon arrival at the house, Endersby stated that he went with Hare into Hare's garage. According to Endersby, Hare told him that Hare had someone else lined up to move into the Property. At this point, Endersby explained that Hare attempted to give Endersby his $500 back, but Endersby

denied accepting the money. Specifically, Endersby testified "And then [Hare] said 'Well' you know 'I'm gonna' give your month's rent back.' And I said 'No, I'm not accepting that.' " *Id.* at p. 82. He stated that he left the house right after refusing the money.

{¶29} Endersby claimed that he witnessed people moving truckloads of furniture into the Property on June 26, 2014. Endersby also testified that he attempted to pay rent two additional times by sending checks via certified mail. He explained that both were timely and neither were cashed nor deposited.

{¶30} Endersby was asked to describe how he bought the furniture and he explained that he saw the furniture on the internet and thought it was too good of a deal. He testified that he called Hare and told Hare that he had hired two guys to pick up the furniture in a box truck and arranged for them to drop the furniture off at the Property. Endersby also confirmed that he still possessed the keys to the Property because he felt that he was the lawful tenant.

{¶31} On cross-examination, Endersby admitted that he never sent a check or other method of payment from July 15 to September 3, 2014. Endersby also stated that he valued the stolen property to be worth $1,150. Endersby confirmed that he saw the rest of his furniture in the garage during the time Mitchell occupied the Property.

Case Nos. 1-15-46, 1-15-47

**{¶32}** Hare's counsel then asked Endersby about a prior forgery conviction from 1994 when the following exchange occurred.[4]

Q: Mr. Endersby, uh, do you recall back in 1994 a criminal case here in Allen County?

A: Yes.

Q: Can you tell the court what that was about?

[E]: Objection. Not relevant, judge.

[M]: The relevancy?

[H]: Uh, your honor, I have a certified copy. A forgery goes to credibility.

[M]: On what?

[H]: Forgery. Certified copy of the judgment entry of conviction. Here's the, uh….

[M]: When was it?

[H]: 1994. Here's the, uh, copy.

[M]: When in 2004?

[H]: 1994.

[E]: What month?

[M]: It's less than 10 years so he can bring it in.

*Id.* at p. 103-104.

---

[4] For ease of reading, "H" refers to Hare's counsel as the speaker, "E" refers to Endersby's counsel as the speaker, and "M" refers to the Magistrate as the speaker.

**{¶33}** On examination by the court, Endersby admitted that he was in control of the property when the alleged theft occurred. He also admitted that he was more than 15 days late when he sent the check on September 4 according to the verbal agreement. At the conclusion of his testimony, Endersby rested.

**{¶34}** After the presentation of evidence, the magistrate indicated that he was ready to rule on the case. The magistrate found that both parties entered into a lease agreement that was to originally become effective on June 1, 2014. However, there was a novation as far as when payments were due, thus the magistrate found that payments were due on the 15th of each month. The magistrate found that Hare paid Endersby the $500, representing the rent payment made on June 18, and that Endersby accepted the money. Once Endersby accepted the money, the magistrate determined that the lease was terminated. In addition to these findings, the magistrate found that even if the lease was not terminated, then no payments were made in the middle of August 2014.

**{¶35}** The magistrate found that Hare was entitled to restitution of the Property and dismissed Endersby's complaint. Hare was also ordered to return the $700 deposits to Endersby.

**{¶36}** The magistrate issued separate written decisions in both cases on December 19, 2014. The two decisions were identical in substance.

**{¶37}** Endersby filed two separate, but identical, objections to the magistrate's decision, one in each case on December 26, 2014. On March 10,

2015, Endersby filed two separate, but identical, supplemental objections to the magistrate's decision, one in each case.

{¶38} In Case No. 14CVG03007, Hare filed his response to Endersby's objections on April 17, 2015.[5]

{¶39} On April 24, 2015, the trial court entered separate, but identical, judgment entries affirming the magistrate's decision. Endersby filed separate notices of appeal for both cases. This court dismissed both appeals for lack of a final appealable order on June 3, 2015. *Hare v. Endersby*, 3d Dist. Allen Nos. 1-15-32, 1-15-33 (June 3, 2015).

{¶40} On June 17, 2015, the trial court entered new separate judgment entries in each case. In each entry, the trial court adopted the magistrate's decision, but also issued its own order, which mirrored that of the magistrate's. The court filed additional separate entries on July 9, 2015, which included specific findings as to each objection to the magistrate's decision.

{¶41} Endersby then filed two separate notices of appeal. This court consolidated the two cases for purposes of appeal on July 28, 2015. On appeal, Endersby presents the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN FINDING THAT THERE WAS AN ORAL MUTUAL AGREEMENT TO END THE LEASE.**

---

[5] Hare did not file a response to Endersby's objections in Case No. 14CVH02579

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S COMPLAINT WITHOUT HEARING AND CONSIDERING ALL THE ISSUES IN THE APPELLANT''S [SIC] ORIGINAL COMPLAINT.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE APPELLEE CONSTRUCTIVELY EVICTED THE APPELLANT BY GIVING PERMISSION TO ANOTHER TO TAKE POSSESSION OF THE PROPERTY AS A TENANT IN KIND DEPRIVING THE APPELLANT OF HIS RIGHTFUL USE AND ENJOYMENT OF THE PROPERTY.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED BY CHANGING THE SEQUENCING OF THE CONSOLIDATED HEARING, SO THAT APPELLANT'S COMPLAINT WAS HEARD AFTER THE EVECTION [SIC] COMPLAINT.**

*Assignment of Error No. V*

**THE TRIAL COURT ERRED IN ALLOWING INTO THE RECORD EVIDENCE OF A TWENTY YEAR OLD CONVICTION IN VIOLATION OF EVIDENCE RULE 609(B).**

{¶42} Due to the nature of Endersby's assignments of error, we elect to address some of them together and out of order.

*Assignment of Error No. I*

{¶43} In his first assignment of error, Endersby argues that the trial court erred by finding that there was a mutual oral modification that terminated the lease

-15-

agreement. Specifically, Endersby argues that he never agreed to terminate the lease. We disagree.

**{¶44}** An appellate court reviews the trial court's decision to adopt, reject or modify the magistrate's decision under an abuse of discretion standard. *Figel v. Figel*, 3d Dist. Mercer No. 10-08-14, 2009-Ohio-1659, ¶ 9, citing *Marchel v. Marchel*, 160 Ohio App.3d 240, 2005-Ohio-1499, ¶ 7 (8th Dist.). However, when reviewing the magistrate's decision, the trial court "shall undertake an independent review as to the objected matters to ascertain that the Magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d); *Goldfuss v. Traxler*, 3d Dist. Wyandot No. 16-08-12, 2008-Ohio-6186, ¶ 7. Accordingly, the trial court is free to adopt, reject, or modify the decision of the magistrate under its de novo review. *Id.*, citing *Stumpff v. Harris*, 2d Dist. Montgomery No. 21407, 2006-Ohio-4796, ¶ 16; Civ.R. 53(D)(4)(b). Furthermore, a trial court's decision will not be reversed on appeal as being against the manifest weight of the evidence as long as there is some competent, credible evidence to support the decision. *Cichanowicz v. Cichanowicz*, 3d Dist. Crawford No. 3-08-04, 2008-Ohio-4779, ¶ 20, citing *Duer v. Moonshower*, 3d Dist. Van Wert No. 15-03-15, 2004-Ohio-4025, ¶ 15.

**{¶45}** A lease is a contract and is subject to the traditional rules of contract interpretation. *Heritage Court, L.L.C. v. Merritt*, 187 Ohio App.3d 117, 2010-Ohio-1711, ¶ 14 (3d Dist.). "A tenancy is possession or occupancy of land by

-16-

right or title, especially under a lease, which is a contract by which an owner or rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usually rent." *Kanistros v. Holeman*, 2d Dist. Montgomery No. 20528, 2005-Ohio-660, ¶ 15. An oral modification of a written contract requires that it must be supported by new and distinct consideration. *Ayres v. Burnett*, 2d Dist. Clark No. 2013-CA-88, 2014-Ohio-4404, ¶ 15, quoting *Coldwell Banker Residential Real Estate Servs. v. Sophista Homes, Inc.*, 2d Dist. Montgomery No. 13191, 1992 WL 303073, *3 (Oct. 26, 1992). It is well established that the party seeking to prove modification has the burden of proving consideration. *Coldwell Banker* at *3.

{¶46} At trial, both parties agreed that they had entered into a valid lease agreement sometime in either April or May 2014. Further, Hare argued that he and Endersby mutually agreed to terminate the lease the night Endersby visited Hare at his home. Hare testified that he told Endersby that it just was not going to work with Endersby's complaints about the property. Hare explained that he handed Endersby $500 in cash, which represented that month's rent payment, and Endersby accepted the payment. He also stated that he and Endersby agreed that the remaining $700, representing the security and utility deposits, would be returned after Endersby returned the keys. Rosemary testified that she witnessed a man meet Hare in Hare's garage. She explained that she watched Hare hand money to this man and that the man accepted the cash. Under Hare's argument,

the return of the $500 rent payment constituted new and distinct consideration for the modification.

{¶47} Contradicting Hare and Rosemary's testimony is that of Endersby. Endersby admitted that he went to Hare's garage that night and that Hare attempted to terminate the lease by offering to return Endersby's rent payment. However, Endersby emphatically stated that he did not accept the money and that he did not want the lease to be terminated.

{¶48} Thus, the issue of whether there was a mutual oral modification to terminate the lease rested solely on whose testimony the magistrate found to be more credible. It is well-established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. In this case, the magistrate was in the best position to observe the body language and mannerisms of each witness in order to determine the credibility of each witness.

{¶49} Because the magistrate's decision was supported by competent, credible evidence in the case sub judice, the trial court did not abuse its discretion by adopting the magistrate's decision.

{¶50} Accordingly, we overrule Endersby's first assignment of error.

*Assignment of Error No. IV*

{¶51} In his fourth assignment of error, Endersby argues that the magistrate erred by changing the sequencing of the consolidated hearing. Specifically,

Case Nos. 1-15-46, 1-15-47

Endersby argues that his complaint should have been heard before Hare's eviction complaint. We disagree.

**{¶52}** "Whether to consolidate cases is within the trial court's discretion; and therefore, an appellate court will not reverse absent an abuse of discretion." *Hubbard v. City of Defiance*, 3d Dist. Defiance Nos. 4-12-22, 4-12-23, 2013-Ohio-2144, ¶ 15, citing *McDonnold v. McDonnold*, 98 Ohio App.3d 822, 827 (11th Dist.1994). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶53}** Endersby argues that it was improper for the magistrate to hear Hare's complaint before his own because it changed the burdens of proof and persuasion. Specifically, Endersby claims that had his complaint been heard first then he would have had the burden to establish that a lease existed and that he was constructively evicted from the Property when Hare agreed to lease the Property to Mitchell while also proving that he paid each month's rent on time.

**{¶54}** Initially, we note that nowhere in Endersby's brief does he cite any case law or other authority to support his argument. This is in direct violation of App.R. 16(A)(7), which provides that the appellant's brief contain "[a]n argument

containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the authorities, statutes, and parts of the record on which appellant relies*." (Emphasis added.) Additionally, Endersby's argument lacks merit.

**{¶55}** In this particular case, it was irrelevant as to which case would be heard first. Regardless of which case was heard first, testimony would have been elicited that proved that an oral modification to terminate the lease occurred. Because the alleged oral modification occurred before any possible constructive eviction, Endersby was not prejudiced by having Hare's complaint heard first. This fact, coupled with Endersby's failure to cite *any* support for his argument, leads this court to conclude that the magistrate did not abuse its discretion by consolidating the cases for purposes of trial and by allowing Hare to proceed first on his claim.

**{¶56}** Accordingly, we overrule Endersby's fourth assignment of error.

*Assignments of Error Nos. II & III*

**{¶57}** In his second and third assignments of error, Endersby argues that the trial court erred by dismissing his complaint since he was constructively evicted by Hare. We disagree.

**{¶58}** Again, the trial court's adoption of the magistrate's decision is reviewed under an abuse of discretion analysis. *Figel*, 2009-Ohio-1659 at ¶ 9, citing *Marchel*, 2005-Ohio-1499 at ¶ 7. Furthermore, a trial court's decision will

-20-

not be reversed on appeal as being against the manifest weight of the evidence as long as there is some competent, credible evidence to support the decision. *Cichanowicz*, 2008-Ohio-4779 at ¶ 20, citing *Duer*, 2004-Ohio-4025 at ¶ 15.

**{¶59}** In his complaint, Endersby argued that he was entitled to relief under theories of constructive eviction and theft. Constructive eviction typically requires some interference by the landlord with the tenant's possession and enjoyment of the rented premises. *See Foote Theatre, Inc. v. Dixie Roller Rink, Inc.*, 14 Ohio App.3d 456, 457-458 (3d Dist.1984). It is inherent that for a person to claim constructive eviction from a piece of property he or she must have some interest in the property. Endersby alleges that he was constructively evicted on or about July 3, 2014, when Mitchell began to occupy the Property. As this court found supra, the lease between Hare and Endersby was terminated in June 2014, and Endersby's rights in the Property were extinguished on that date. Therefore, Endersby could not have been constructively evicted from a property in which he holds no interest.

**{¶60}** Endersby also argues that neither the magistrate nor the trial court ever disposed of his theft claim. This is not supported by the record. In its decision, the magistrate found that "[Endersby] has failed to prove his case (14CVH02759) by competent and reliable evidence and his complaint is dismissed." (Case No. 14CVH02759, Docket No. 9, p.3); (Case No. 14CVG03007, Docket No. 11, p.3). After conducting its independent review of

the magistrate's decision, the trial court entered judgment on Endersby's claim and determined that "[Endersby's complaint (14CVH02759) is dismissed." (Case No. 14CVH02759, Docket No. 24); (Case No. 14CVG03007, Docket No. 28). Later, the trial court issued another judgment entry, this time stating that "[Endersby] has failed to prove his case (14CVH2759) and the same is dismissed." (Case No. 14CVH02759, Docket No. 26, p. 12); (Case No. 14CVG03007, Docket No. 29, p. 12). Thus, any claim that neither the magistrate nor the trial court ever considered Endersby's theft claim is meritless.

{¶61} As to the merits of Endersby's theft claims, there was contradictory evidence presented to the magistrate as to what property was placed in the garage, who put it there, how it got there, when it was stolen, who could have taken it, and whether Hare even knew it was ever in the garage. Therefore, it was up to the magistrate to determine the credibility of all the witnesses. As the trier of fact, the magistrate was in the best position to perform this task. *DeHass*, 10 Ohio St.2d 230 at paragraph one of the syllabus. Because the magistrate's decision was supported by competent, credible evidence, the trial court did not abuse its discretion by adopting the magistrate's decision to dismiss Endersby's complaint in full.

{¶62} Accordingly, we overrule Endersby's second and third assignments of error.

*Assignment of Error No. V*

**{¶63}** In his fifth assignment of error, Endersby argues that the magistrate erred by allowing a twenty-year-old conviction for forgery into evidence in violation of Evid.R. 609(B). We disagree.

**{¶64}** Trial courts have the broad discretion in determining whether to admit or exclude evidence. *Deskins v. Cunningham*, 3d Dist. Union No. 14-05-29, 2006-Ohio-2003, ¶ 53, citing *Huffman, et al. v. Hair Surgeon, Inc.* 19 Ohio St.3d 83 (1985). "Accordingly, a trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion." *Moore v. Moore*, 182 Ohio App.3d 708, 2009-Ohio-2434, ¶ 15 (3d Dist.). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Boles*, 2010-Ohio-278 at ¶ 16-18. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore*, 5 Ohio St.3d at 219.

**{¶65}** Evid.R. 609(A)(3) allows parties to introduce a witness's prior convictions of crimes involving dishonesty or false statements to be admitted into evidence to attack his or her credibility. This is restricted by Evid.R. 609(B), which states that the "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction * * *, unless the court determines, in the interests of justice, that the probative value of

the conviction supported by specific facts and circumstances substantially outweighs the prejudicial effect."

**{¶66}** In the case sub judice, it is clear from the record that the magistrate admitted Endersby's 1994 conviction for forgery into evidence. At the time of the trial, this conviction was over 20 years old. Further, the magistrate did not find that the probative value of the conviction substantially outweighed the prejudice to Endersby. Therefore, it was error to admit the conviction into evidence, which is conceded by Hare.

**{¶67}** Evidentiary rulings involving error under Evid.R. 609 are subject to harmless error analysis. *See United States v. Newman*, 849 F.2d 156, 163 (5th Cir.1998).

**{¶68}** Here, there was no prejudice to Endersby. First, a copy of the conviction was never entered into evidence nor was any other evidence on the issue presented or permitted. Second, this case involved a civil dispute rather than criminal charges. Although the Rules of Evidence apply to both, the risk for prejudice is more prevalent in a criminal case than a civil case like the one here. Third, the case was a trial before a magistrate, not a jury. Finally, the trial court noted the error and adopted the magistrate's decision regardless, finding that there was strong evidence to support Hare's case even without the prior forgery conviction. Therefore, the magistrate's decision to admit Endersby's prior conviction was harmless and not an abuse of discretion.

**{¶69}** Accordingly, we overrule Endersby's fifth assignment of error.

**{¶70}** Having found no error prejudicial to Endersby, in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/jlr**