DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the November 26, 2002 judgment entry of the Lucas County Court of Common Pleas, Domestic Relations Division, which granted the parties, plaintiff-appellant, Jeffrey L. Baker, and defendant-appellee, Robyn S. Baker, a divorce, divided the parties marital assets and liabilities, awarded appellee custody of the parties' two minor children, ordered that appellant pay child support and spousal support, and ordered that appellant pay appellees' attorney fees. For the following reasons, this court affirms the decision of the trial court.
 {¶ 2} Appellant raises the following assignments of error:
 {¶ 3} "I. The trial court abused its discretion by not applying Ohio Revised Code section 3109.04(F)(1) in its allocation of parental rights.
 {¶ 4} "II. The trial court abused its discretion by awarding defendant attorney's fees."
 {¶ 5} The parties were married on July 21, 1990. Two children were born of the marriage: Charles, born December 6, 1991, and James, born October 4, 1994. On May 18, 2001, appellant filed a complaint for divorce and on June 5, 2001, appellee filed an answer and counterclaim for divorce. Each party requested being designated the sole residential parent. On July 18 and July 29, 2002, the case came on for hearing on the issues of the allocation of parental rights and responsibilities, the division of marital property and debt, child support, spousal support, and attorney fees. At the hearing, the following relevant evidence was presented.
 {¶ 6} The parties were married in 1990, and they lived in Missouri until the fall of 1991, when appellant's employer transferred him to Pittsburgh. In 1998, when the children were seven and four, appellant was transferred to Maumee, Ohio; on the date of the hearing, appellant worked at the suburban Detroit, Michigan office and commuted daily from Maumee.
 {¶ 7} Approximately three years prior to their marriage, appellee worked as a laboratory technician following a year of vocational training. For about six months during the marriage, appellee worked full-time as a file clerk for an insurance company. During the remainder of the marriage, appellee was not employed outside the home and was the primary caretaker of the parties' children.
 {¶ 8} Appellant testified that he desired to have custody of the children and expressed concerns, based upon prior domestic violence incidents, regarding appellee being named custodial parent. Appellant testified that in May 2001, appellant confronted appellee upon discovering that she removed a large sum of money from their savings account and opened her own. Appellee stated that she removed the money because of the invoice she found from a divorce lawyer. The argument escalated and appellee slapped appellant across the face. Appellant stated that he called the police and a domestic violence complaint was filed; appellant eventually dismissed the charges. Following this incident, the court issued a one-year civil protection order, which, inter alia, prohibited appellee from using corporal punishment on the children. In November 2001, appellee violated the order by hitting her son on the leg.
 {¶ 9} Appellant testified that in March 2002, he again called the police to their home because appellee threw a plate through the kitchen window. The incident stemmed from a discipline problem appellee was having with their son, James.
 {¶ 10} Appellant stated that if he received custody of the children he would like to remain in Maumee and continue to live in the marital home, which he was awarded. Appellant indicated that he had made preliminary arrangements with a caregiver who responded to a newspaper advertisement and attended his church.
 {¶ 11} Appellee recited her version of the above events. Appellee testified that during the May 2001 incident, appellant slammed his fist down on the kitchen table and "spit was flying in [her] face" and she pushed him away from her. The November 2001 incident occurred when appellee was putting James to bed. Appellee stated she was sitting on James' bed when he kicked her thigh; appellee then pushed his foot away but may have hit "something."
 {¶ 12} As to the March 2002 incident, appellee stated that she was having difficulty disciplining James who refused to go to his room. Appellee testified that she carried the seven year-old up the steps while appellant watched and did nothing. Appellant then confronted appellee about the "red marks" under James' arms and then stated that he had to make a phone call. Appellee stated that she threw the plate because she believed that appellant was going to call the police.
 {¶ 13} Appellee testified that appellant constantly criticized her and called her "selfish" for not putting his needs first. Appellee stated that appellant wanted to be greeted a certain way when he arrived home from work and wanted to be complimented.
 {¶ 14} Appellee testified that she had suffered from depression beginning in 1999, after the parties sought marital counseling. Appellee admitted that she had a prescription for Prozac, but stopped taking it during the pendency of the divorce.
 {¶ 15} Appellee stated that she believes that appellant does not support her when she is attempting to discipline the children. Appellee also feels like appellant has manipulated the children by portraying himself as the "fun" parent, taking the children to sporting events and on camping trips.
 {¶ 16} Appellee testified that she would like to move to Arkansas to be closer to her family, but she would stay in Maumee as a condition to having custody of the children. Appellee stated that she did not have alternate housing, but was investigating an apartment complex close to their current home.
 {¶ 17} Court counselor, Gary Incorvaia, testified that he interviews couples with children who are going through a divorce. Incorvaia stated that he interviewed the parties together and individually, and the children individually. Based upon these interviews, Incorvaia recommended that appellee be designated the residential parent and that appellant have standard visitation.
 {¶ 18} Incorvaia based his recommendation on the following information. Incorvaia testified that appellant believed that he should be designated residential parent because appellee was "unstable" and he could provide better "limits" for the children. Conversely, appellee told Incorvaia that she was not unstable, abusive or neglectful. Likewise, the children did not believe that appellee had been abusive or neglectful and desired to reside with her following the divorce.
 {¶ 19} Regarding the domestic violence issues, Incorvaia stated that he did not feel that it was an ongoing problem in the marriage. Incorvaia felt that both parties were responsible and that this was not a reason to deny appellee custody of the children.
 {¶ 20} Incorvaia felt it was in the best interests of the children to reside with appellee because she had always been the primary caretaker. Incorvaia did acknowledge that appellee's role necessarily stemmed from the fact that appellant had to work long hours to provide financial support for the family. Incorvaia also admitted that he was not aware that appellee had been found in contempt of the court's protection order or the fact that appellee threw a plate through the kitchen window; these events occurred after he completed his interviews.
 {¶ 21} Guardian ad litem, Theodore Tucker, recommended that the court designate appellant as the residential parent. In reaching his recommendation, Tucker used the statutory criteria, R.C. 3109.04, that the court is required to use.
 {¶ 22} As to appellee, Tucker noted that she wished to move to Arkansas to be closer to her family but that the children had close ties to the community. He also found that there have been instances where she used poor judgment in terms of her anger. Tucker did acknowledge that appellee was the children's primary caregiver but that both parties have a "close and affectionate relationship" with their children.
 {¶ 23} The trial court's November 13, 2002 decision found, as to the allocation of parental rights, the following R.C.3109.04(F)(1) factors to be relevant to the determination that awarding appellee custody was in the best interests of the children. Under R.C. 3109.04(F)(1)(a) the court found that both parties wished to be awarded custody of the children. As to R.C.3109.04(F)(1)(c), the children's interaction and relationship with each other and their parents, the court found that appellant was "controlling" and "pitted" the children against appellee. The court concluded that appellant interacts well with his children and that appellee's interactions with the children have been "problematic as a result of [appellant]'s conduct."
 {¶ 24} Under R.C. 3109.04(F)(1)(d), the court concluded that the children are well-adjusted to their home, school and community. Further, under R.C. 3109.04(F)(1)(e), all parties are of good physical and mental health. The court attributed the fact that appellee had been using Prozac to her martial difficulties.
 {¶ 25} As to R.C. 3109.04(F)(1)(f), the court expressed no concern that that either party would interfere with the other's court-approved parenting time. The court further found, under R.C. 3109.04(F)(1)(h), that neither party had been convicted of domestic violence or acted in a manner where the children were abused or neglected. Finally, as to whether either party planned to establish a residence outside the state, R.C.3109.04(F)(1)(j), the court found that appellee agreed to remain in the district if she were awarded custody.
 {¶ 26} In its decision, the court also divided marital property, marital debt, and ordered that appellee receive child and spousal support. The court also ordered that appellant pay appellee's attorney fees of $10,000.
 {¶ 27} The court's November 13, 2002 decision was finalized in the court's November 26, 2002 final entry of divorce. On the same date, appellant filed a motion for a new trial based upon the court's ruling regarding the allocation of parental rights, the calculation of child support, the award of attorney fees, and the division of certain property. The motion was denied on January 13, 2003, but the court amended its decision as to the child support calculation, attorney fee award and division of the parties' 401(k) plan. This appeal followed.
 {¶ 28} In appellant's first assignment of error, he argues that the trial court abused its discretion by not properly considering R.C. 3109.04(F)(1) factors (c), (d), (e), (h) and (j). Because the court has broad discretion in custody award matters, we must uphold a custody decision unless there has been an abuse of discretion. Sayre v. Hoelzle-Sayre (1994),100 Ohio App.3d 203, 210. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 29} Here, the trial court's November 13, 2002 decision, as summarized above, clearly demonstrates that it considered all of the relevant statutory factors. After reviewing the factors, the court found that appellee "demonstrated the more appropriate parenting skills." Upon careful review, we conclude that the findings made by the court in its decision are supported by competent, credible evidence.
 {¶ 30} Appellant further disputes the fact that the court failed to follow the recommendation of the guardian ad litem. A trial court determines the guardian ad litem's credibility and the weight to be given to any report. In the matter of SydneyJ. (Sept. 30, 1999), 6th Dist. No. OT-99-026. A trial court is not bound by the guardian's recommendation. In re Andrew B.,
6th Dist. No. L-01-1440, 2002-Ohio-3977, at ¶ 64-65. Thus, despite the guardian ad litem's recommendation that appellant be designated as custodial parent, the trial court could have properly found otherwise.
 {¶ 31} Based on the foregoing, we find that the trial court did not err when it awarded custody of the parties' minor children to appellee. Appellant's first assignment of error is not well-taken.
 {¶ 32} Appellant's second assignment of error disputes the trial court's award of attorney fees to appellee. Appellant contends that based upon the division of the marital assets, the award of spousal support, and appellee's employability, an attorney fee award was not warranted.
 {¶ 33} A decision to award or not to award attorney fees should not be interfered with absent a clear showing of abuse or prejudice by the trial court. Birath v. Birath (1988),53 Ohio App.3d 31, 39. R.C. 3105.18(H) permits an award of attorney fees if the court:
 {¶ 34} "determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 35} In the present case, we conclude that the trial court did not err in awarding appellee reasonable attorney fees. The facts of this case demonstrate that appellee would be prevented from fully litigating her rights and adequately protecting her interests without such an award. Appellee had not, other than sporadic part-time jobs, been employed since the birth of the parties' children; appellant provided all the financial support for the family. Accordingly, appellant is better able to pay appellee's attorney fees. Appellant's second assignment of error is not well-taken.
 {¶ 36} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Court costs of this appeal are assessed to appellant.
Judgment Affirmed.
Knepper, Pietrykowski, and Singer, JJ, concur.