[Cite as *R.E. v. H.F.*, 2017-Ohio-2815.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

R.E.

    Appellant

v.

H.F.

    Appellee

Court of Appeals No. L-16-1232

Trial Court No. JC 12223141

**DECISION AND JUDGMENT**

Decided: May 12, 2017

* * * * *

Laurel A. Kendall, for appellant.

Dan Nathan, for appellee.

* * * * *

**JENSEN, P.J.**

{¶ 1} Father, R.E., appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, granting mother's, H.F., motion for custody of their minor child, M.E. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} Father and mother are unmarried and have one child together, a daughter, M.E., who was born in 2010. In December 2013, father was designated the residential parent by agreement of the parties. Under the 2013 shared parenting agreement, M.E. resided with father during the school year, with mother to have parenting time on the weekends. During the summer, the arrangement would reverse and mother would have M.E. during the week, with father having parenting time on the weekends.

{¶ 3} On June 26, 2015, mother moved to modify the allocation of parental rights and responsibilities, seeking custody of M.E. Father responded by filing a motion to modify the terms of the transportation agreement, and for child support. A CASA was appointed, and the matter proceeded to a trial on March 25, 2016.

{¶ 4} At the trial, mother testified that she was currently unemployed and applying for social security disability for her diagnosed anxiety, bipolar, depression, ADHD, and ADD. She resided with her mother, and did not have a driver's license. She testified that she was supported by her mother and by her fiancé, who would also provide her with transportation. In addition to M.E., mother has one other child, an eight-year-old, biracial daughter. Mother testified that the two children get along well.

{¶ 5} Mother also testified that at the time of the shared parenting agreement, father expressed a desire for M.E. to attend Maumee schools, where he resided, as opposed to Toledo Public schools, where mother resided. However, mother testified that since the shared parenting agreement, father has moved multiple times, and now resides

2.

in the Toledo Public school district. Mother further testified that father has two older sons, and that one of the sons was expelled from school.

{¶ 6} Mother stated that she believed father should not have sole custody of M.E. because he has anger problems and "he's really harsh on the kids." Mother explained that father was physical, and that one time father got drunk and they got into an argument, and father gave mother a black eye and threw her outside with nothing but a shirt on. She added that another time father threatened to "f**k [her] up" because M.E. was twerking at his house. She also testified that father was sent to jail in 2014 for beating up his ex-girlfriend. Mother testified that, in general, father does not treat women well, and refers to them as "bitches and whores and hood rats and hoes and sluts," which concerns her since he is raising her daughter.

{¶ 7} In addition to his treatment of women, mother testified that father often uses the term "nigger," which concerns her because M.E.'s older sister is biracial. Mother further explained that when M.E. comes back from father's house, M.E. will call everyone "bitches," has used the word "nigger," and has called mother "fig-nasty."

{¶ 8} Finally, regarding her perception of father's parenting, mother testified that she has observed him disciplining his two sons by punching them in their head, or by pushing their face and knocking them over.

{¶ 9} Father also testified at the trial, initially as on cross-examination. Father testified that he has only physically disciplined his children a few times, and it was because his oldest son had hit a girl. Father did acknowledge that his children physically

3.

fight, and he lets them fight until it goes too far, then he stops it. Father also conceded that since the December 2013 order, he has moved four or five times, and currently resides in the Toledo Public school district. In addition, father identified several posts from his Facebook account that contained crass, misogynistic, and racist memes, which he admitted he found funny. Father also admitted that he has used the term "nigger" when referring to black people, and that he texted mother "F**k you, I hope you choke and die on that nigger dick you have been sucking." Further, regarding the text message wherein father threatened mother by saying "I'm going to f**k you up," father testified that what came across was auto-corrected, and he intended to type "What the f**k is going on? Why is my daughter twerking." Finally, father testified about circumstances that resulted in a recent domestic violence charge that was ultimately dismissed because the victim failed to appear. Father explained that he was drinking with his girlfriend at the time, he blacked out, and all he remembered was that he awoke with a black eye and scratches on his arms and legs, and that his girlfriend had a black eye. He offered that his girlfriend later told him that she kicked him into his computer and kicked him in his face, and then he hit her.

{¶ 10} On direct examination, father testified that he does not allow his sons to play rough with M.E., and that she has never been hurt while under his care. Father also explained his frequent moves, stating that he initially moved from the Maumee school district when his son was expelled for fighting, but offered that the son was actually defending another child from a bully. He then stayed at a place temporarily while he

4.

saved money, and then purchased a home which he moved out of and is now using as rental income. Concerning the Facebook posts, father testified that he is a very active user, but he does not let his children see his account, and his account is supposed to be private and therefore inaccessible to anyone other than his "friends." Father testified that he has many posts of things about life, about kids, and about fathers and kids. Father also testified that "I am not racist in any way. I just use words." Finally, father testified that he was upset about his daughter "twerking" because he understood it to be a sexual dance that is inappropriate for a child of M.E.'s age.

{¶ 11} Father also called the administrator of M.E.'s preschool as a witness. The administrator testified that M.E. does very well in school and has no problems getting along with other children of all ethnic and cultural backgrounds. The administrator also testified that mother has never met with the administrator or other staff, attended a parent-teacher conference or requested a conference, or contacted the preschool to get information about M.E.

{¶ 12} Lastly, the CASA testified. The CASA testified that as part of his investigation he visited both homes, interviewed both parents, and interviewed all of the siblings. The CASA found father's home to be adequate, and did not find anything of concern regarding how M.E. is treated. On cross-examination, the CASA admitted that he did not complete an unannounced visit as requested by mother, explaining that he has had some personal issues that have vied for his time. He testified that, in his opinion, father's racist statements, while "stupid and misogynistic," would not have any effect on

M.E.'s best interests. Further, he testified that there is no indication that father's lack of residential stability would continue. The CASA also acknowledged that M.E. expressed to him a desire to live with mother. Finally, the CASA testified that it was his recommendation that the current parenting arrangement be maintained, and nothing he heard during the trial changed his opinion.

{¶ 13} On April 13, 2016, the magistrate's decision was entered, finding that there had been a change of circumstances and granting mother's motion to modify the allocation of parental rights and responsibilities. The trial court adopted the magistrate's decision on May 2, 2016, and named mother the residential parent and legal custodian. Thereafter, father objected to the magistrate's decision, and filed supplemental objections once the transcript was completed. On September 20, 2016, the trial court overruled father's objections, and affirmed its earlier May 2, 2016 judgment.

## II. Assignments of Error

{¶ 14} Father has timely appealed the trial court's September 20, 2016 judgment, asserting three assignments of error for our review:

1. The court abused its discretion when it awarded custody to mother against the recommendation of the guardian ad litem.

2. The trial court erred by failing to make findings which support the change of custody under the statute.

3. The trial court erred by failing to find that a change of custody was supported by clear and convincing evidence.

6.

## III. Analysis

{¶ 15} "[R.C. 3109.04(E)(1)(a)] allows a court to modify a prior decree allocating parental rights and responsibilities only if (1) 'a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree' and (2) the modification is in the best interest of the child." *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 21.

{¶ 16} "An appellate court reviews a trial court's decision regarding a motion for modification of a prior allocation of parental rights and responsibilities under an abuse of discretion standard." *Jo.W. v. Je.W.*, 6th Dist. Lucas No. L-14-1095, 2015-Ohio-1058, ¶ 21, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraphs one and two of the syllabus. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 17} In his first assignment of error, father argues that the trial court abused its discretion when it did not follow the recommendation of the CASA. Father urges us to find that it is axiomatic that the recommendation of a properly trained guardian ad litem represents the best interest of the ward. Further, if a trial court elects not to follow that recommendation, it has an obligation to make specific findings as to the basis of its disagreement with the guardian ad litem. Because the trial court here did not make such findings when declining to follow the guardian ad litem's recommendation, father concludes that the decision must be reversed. We disagree.

7.

{¶ 18} R.C. 3109.04 empowers the trial court to modify an allocation of parental rights and responsibilities, and obligates the court to make the determination whether such a modification is in the best interest of the child. In reaching its conclusion, "[a] trial court is not bound by the guardian's recommendation." *Baker v. Baker*, 6th Dist. Lucas No. L-03-1018, 2004-Ohio-469, ¶ 30. Rather, "[a] trial court determines the guardian ad litem's credibility and the weight to be given to any report." *Id.* Father would have us require the court to defer to the recommendation of the guardian ad litem unless it articulates specific reasons why it is not following the recommendation. R.C. 3109.04 does not mandate such a procedure, and father has cited no case law to support his position. To the contrary, as identified by mother, "[T]here is no statute or controlling authority * * * that requires the trial court to rule in accordance with a recommendation from a guardian ad litem unless other evidence specifically contradicts that recommendation." *In re Baby C.*, 10th Dist. Franklin Nos. 05AP-1254, 05AP-1256, 2006-Ohio-2067, ¶ 95.

{¶ 19} Accordingly, father's first assignment of error is found not well-taken.

{¶ 20} In his second assignment of error, father argues that the trial court's judgment entry is deficient because it fails to make any findings in support of the change of custody. Notably, the magistrate's decision and the trial court's judgment entry found by a preponderance of the evidence that there has been a change of circumstances and that modification of custody is in the best interest of the child. Father contends that the trial court's judgment is conclusory, and without any specific findings one can only

8.

speculate as to the basis for the trial court's decision. As such, father concludes that the matter must be remanded for additional proceedings.

{¶ 21} However, "[a] trial court's judgment entry 'may be general,' unless a party makes a request for separate 'findings of fact and conclusions of law.'" *Sayre v. Hoelzle-Sayre*, 100 Ohio App.3d 203, 212, 653 N.E.2d 712 (3d Dist.1994), quoting Civ.R. 52; *see also Werden v. Crawford*, 70 Ohio St.2d 122, 435 N.E.2d 424 (1982), syllabus ("Civ.R. 52, requiring separate findings of fact and conclusions of law upon timely request, applies to change of custody proceedings which involve questions of fact tried and determined by the court without a jury."). "Absent a Civ.R. 52 request for findings of fact, a reviewing court will presume that the trial court considered all the relevant statutory factors." *Dadosky v. Dadosky*, 4th Dist. Pike No. 02CA706, 2003-Ohio-7282, ¶ 8; *Duncan v. Raker*, 6th Dist. Lucas No. L-81-121, 1981 Ohio App. LEXIS 11444, *5 (Oct. 23, 1981) (trial court not required to address each factor of R.C. 3109.04 where appellant did not file a request for findings of fact and conclusions of law under Civ.R. 52).

{¶ 22} In arguing that the trial court must make findings to support its change of custody determination, father cites *In re M.B.*, 9th Dist. Summit No. 21760, 2004-Ohio-597, in which the Ninth District reversed the decision of the trial court in a case involving the termination of parental rights because the trial court failed to make a finding that termination was in the best interest of the child as required by R.C. 2151.414. We find the present case to be distinguishable. Here, unlike in *In re M.B.*, the trial court made the

9.

required findings that a change of circumstances has occurred and that designating mother as the residential parent and legal guardian is in M.E.'s best interest.[1]

{¶ 23} Furthermore, the magistrate's decision in this case contains specific findings that support its conclusion that a change of circumstances has occurred and that a change of custody is in M.E.'s best interest. Specifically, the magistrate found that father has had five different residences since the 2013 order, that father is racist and sexist and has posted several racist and sexist messages on social media, and that in 2014 father was charged with domestic violence after blacking out from a night of heavy drinking and waking up to find that both he and his girlfriend had black eyes. Therefore, we hold that the trial court's judgment entry was not deficient in this case.

{¶ 24} Accordingly, father's second assignment of error is not well-taken.

{¶ 25} In his third and final assignment of error, father argues that the trial court's findings are not supported by the evidence. We disagree. As to the court's finding of a change of circumstances, "the change must be a change of substance, not a slight or

---

[1] Although not raised by father, we note that the trial court failed to make the finding under R.C. 3109.04(E)(1)(a)(iii) that "The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." Nevertheless, we have held that the failure to make the specific findings under R.C. 3109.04 is not fatal where "substantial credible and competent evidence in the record supports the magistrate's decision." *In re Jessica P.*, 6th Dist. Sandusky No. S-97-036, 1998 Ohio App. LEXIS 1841, *15 (May 1, 1998); *see also Dadosky*, 4th Dist. Pike No. 02CA706, 2003-Ohio-7282, at ¶ 14 (trial court's failure to find that the benefits of the change outweighed the harm likely to be caused by the change did not require reversal where there was no request for findings of fact and conclusions of law and the trial court was fully aware of the statutory procedure and considered the appropriate factors). As will be discussed in father's third assignment of error, the record here contains substantial credible and competent evidence supporting the magistrate's decision.

10.

inconsequential change." *Flickinger*, 77 Ohio St.3d at 418, 674 N.E.2d 1159. Here, the evidence shows that since the 2013 order, regardless of the reasons, father has not maintained a stable residence, having moved five times. In addition, father has been involved in an incident of domestic violence precipitated by heavy drinking. Finally, the child has expressed a desire to live with mother. Based upon these facts, and recognizing the wide latitude afforded to the trial court in making these determinations, we hold that the trial court's finding of a change of circumstances was not an abuse of discretion.

{¶ 26} Turning to whether a change of custody is in M.E.'s best interest, we find that the trial court's decision is supported by the evidence of father's racist and sexist attitudes displayed by his social networking account and his messages to mother, father's treatment of women, including instances of physical abuse, and the frequency with which father has moved. Therefore, we hold that the trial court did not abuse its discretion when it concluded that an award of custody to mother is in M.E.'s best interest.

{¶ 27} Accordingly, father's third assignment of error is not well-taken.

## IV. Conclusion

{¶ 28} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Father is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.           

_____
JUDGE

Thomas J. Osowik, J.      

_____
JUDGE

James D. Jensen, P.J.     
CONCUR.

_____
JUDGE